## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 09-21871-CIV-KING

JAMES A. BACON, et al.,

      Plaintiffs,

v.

STIEFEL LABORATORIES, INC., et al.,

      Defendants.

_____/

### OPINION DENYING CLASS CERTIFICATION

At issue is whether class certification is appropriate where a group of plaintiffs – participants in an ERISA plan and holders of individual shares of the stock of a closely-held corporation – allege a fraudulent scheme on the part of a corporation's board members to conceal the value of the participants' shares and to benefit improperly from the participants' premature sale of those shares. Upon consideration of the parties' respective filings and after hearing oral argument, the Court finds that the Plaintiffs have failed to demonstrate either that their alleged commonalities predominate over individual considerations, or that class action is superior to individual action. Therefore, class certification must be denied.

## I.      Procedural Background

Plaintiffs filed their first Complaint (DE #1) on July 6, 2009.[1]  Subsequently,

Defendants filed a Motion to Dismiss (DE # 21) on September 14, 2009, which was granted

in part by the Court (DE #43) on January 4, 2010.  Plaintiffs amended their Complaint (DE

#47) on February 8, 2010.  After Defendants filed another Motion to Dismiss (DE #51), the

Court again dismissed (DE #69) Plaintiffs' claims in part.  In that Order, the Court dismissed

with prejudice Counts 5-7 of the Amended Complaint and ordered Defendants to answer

Counts 1-4.  Counts 1-4 of the Amended Complaint sought the following relief:

> Count 1: Breach of Fiduciary Duty against the Director Defendants, Committee
> Defendants and Matt S. Pattullo under ERISA;
>
> Count 2: Breach of Co-Fiduciary Duty against the Director Defendants, Committee
> Defendants, and Matt S. Pattullo under ERISA;
>
> Count 3: Prohibited Transaction with Party in Interest against Director
> Defendants. Committee Defendants, Charles Stiefel, and Matt S. Pattullo under
> ERISA;
>
> Count 4: Securities Fraud against the Company and Charles Stiefel under the
> Securities and Exchange Act.

(DE #47).  Therefore, the first three counts of Plaintiffs' Amended Complaint state ERISA

claims, while the fourth seeks to recover under federal securities law.[2]  Defendants

answered (DE #75) the Amended Complaint on June 11, 2011.  Since that time, both parties

---

[1] As a foundational matter, the Court notes that there are now three other actions predicated upon substantially the same allegations.  The first competing action is *Bacon v. Stiefel*, et al., which this Court accepted in transfer from the Honorable Joan A. Lenard on May 6, 2011.  (Case No. 11-cv-20489-JLK, DE #11).  Mr. Bacon was once a named Plaintiff in 09-21871-JLK but was dropped as a representative plaintiff in the Second Amended Complaint.  (DE #115).  Now, he is pursuing individual action.  Additionally, two other cases have been filed, alleging substantially the same factual basis for recovery: those cases are *Fried v. Stiefel Laboratories, Inc.*, Case No. 11-cv-20853-JLK; and *100079 Canada, Inc. v. Stiefel Laboratories*, Case No. 11-cv-22389-JLK.  In each of these competing actions, the plaintiffs allege the same series of misrepresentations and omissions by many of the same defendants to this case.  Each action was filed by attorney Norman Segall.

[2] To support a Rule 10(b)-5 securities fraud claim, Plaintiffs must" show 1) a misstatement or omission, 2) of a material fact, 3) made with scienter, 4) on which plaintiff relied, 5) that proximately caused his injury." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1281 (11th Cir. 1999).

have conducted significant discovery with an eye towards eventual adjudication of the propriety of class treatment.

Now, the issue of class certification is properly before the Court. Plaintiffs filed their Motion for Class Certification (DE #170) on March 10, 2011. Therein, they request the Court take the following action: 1) certify the above-styled lawsuit as a class action; 2) certify the classes proposed by Plaintiffs; 3) certify Mark Palakovich, Michael Teller, and Timothy Finnerty as Class Representatives; and 4) designate Segall Gordich and Ruden McClosky as Class counsel. *Id.* at 2. Defendants oppose Plaintiffs' requested relief, both on the theory that Plaintiffs fail to state a claim and because class certification is inappropriate to adjudicate what Defendants contend amount to individual claims.[3]

## II.    Factual Allegations

The Court has previously summarized the factual background of this matter. (DE #43). In broad strokes, Plaintiffs, current and former employees of Stiefel Laboratories, allege a far-ranging plan on the part of certain board members of Defendant Stiefel Laboratories to manipulate the employees' ownership over shares of the privately-held company. According to the Plaintiffs, the purpose of this manipulation was to permit Defendants to profit improperly from Stiefel Laboratories' eventual sale, which was not previously divulged to any of the current or former employees. Below, Plaintiffs' allegations are discussed in greater detail.

---

[3] This issue of class certification has been fully briefed by the parties, as Defendants filed their Response (DE #180) on March 25, 2011, to which Plaintiffs filed a Reply (DE #193) on April 21, 2011, and Defendants subsequently filed a Sur-Reply (DE #209). Although Plaintiffs now request leave from the Court to file an Amended Reply (DE #211) on the basis that their earlier reply was based upon "false or misleading statements" contained in Defendants' Response, the Court finds no need for such an Amended Reply at this time.

3

### A. Stiefel Laboratories and its Employee Plan

Defendant Stiefel Laboratories was at all relevant times the largest privately-held dermatological products manufacturer in the world, with over 4,000 employees worldwide and nearly $1 billion in sales. According to the Second Amended Complaint (DE #124), Stiefel Laboratories has always been controlled by the founding Stiefel family. At various times in the recent past, the company was run by members of the Stiefel family, including two brothers, Herbert and Warner, and one of their nephews, Charles. In 1995, Charles Stiefel became the president and CEO of Stiefel U.S. Six years later, Charles was elected Chairman of the Board, president and CEO. Other members of the board included Charles' two sons, Brent and Todd. The Stiefel family owned or controlled more than 70% of the outstanding voting common stock and more than 60% of the total outstanding common stock of Stiefel Laboratories. Charles Stiefel himself owned more than 90% of the Class B voting stock, which allowed him to elect a majority of the Board of Directors for Stiefel Laboratories.

On April 16, 1975, long before Charles Stiefel took over as president and CEO, Stiefel Labs established an Employee Stock Ownership Plan ("Plan") within the meaning of ERISA. Under the Plan, Stiefel Laboratories annually contributed its common stock until December 31, 2008, when an equivalent contribution was made in cash. The stock contributed by Stiefel Laboratories was held in the name of the Plan, but individual accounts were established for assignment to participants. The Board of Directors designated certain individuals to serve as Plan Trustees: at all times relevant to the above-styled matter, Charles Stiefel was Plan Trustee until being replaced October 20, 2008. In his capacity as Plan Trustee, Charles Stiefel managed, administered, and disposed of the Plan's assets.

In 2008, after hiring an external consulting firm to consider Stiefel Laboratories' ERISA Plan and 401(k) plan, Stiefel Laboratories elected to combine the plans to become current with the industry practices. Under this new investing structure, which was to become effective January 1, 2009, Stiefel Laboratories' employees would have the "first time ever [opportunity]" to diversify their holdings, and would be able to obtain distribution of his or her shares of Stiefel stock if they were vested participants. At that time, the valuation of each share of Stiefel stock, last performed on March 31, 2008, was $16,469.

## B. Allegations of Impropriety

According to the Second Amended Complaint, ERISA obligated Stiefel Laboratories to perform certain actions in its administration of the Plan. However, Stiefel Laboratories failed to comply with some of those requirements. Additionally, the Second Amended Complaint alleges a pervasive and fraudulent pattern of behavior by Defendants, which was allegedly designed to prevent Plan participants from realizing the value of their shares in the privately-held company.

Underlying this pattern of behavior was Defendants' alleged failure to provide an accurate appraisal of Stiefel Laboratories' worth and concomitant stock price. In particular, Plaintiffs claim that Stiefel failed to retain an independent appraiser as required by federal law. Under ERISA, Stiefel Laboratories was required to provide annually a fiscal year-end valuation of the participants' accounts and to determine the amount Stiefel would pay for each share put to it. To effectuate that obligation, ERISA obligates a Plan Trustee to "retain an independent appraiser who meets requirements similar to those contained in regulations similar to those contained in section 170(a)(1) ..." Pl. Ex. 56 Plan ¶ 9.7.

5

Plaintiffs allege that Defendants knowingly retained an appraiser that was neither independent nor competent,[4] although Plaintiffs were never informed of the appraiser's inadequacy.

The direct result of Defendants' failure to obtain qualified appraisals was that the accounts within the Plan were grossly undervalued. In support of this claim, Plaintiffs point to individual valuations performed by outside investment firms. So, for instance, Plaintiffs point out that, on November 20, 2006, the investment firm of Lindsay Goldberg and Bessemer arrived at a valuation of $1.9-2.2 billion. On the same day, a New York investment firm called Blackstone subscribed to an enterprise valuation of $2.53-2.793 billion. Less than a year later on July 31, 2006, TA Associates proposed their own investment based on a valuation of Stiefel Laboratories of $2.7 billion. It was in 2007 that Blackstone and Stiefel Laboratories entered into a deal whereby Blackstone invested $500 million in Stiefel Laboratories, netting 8,277 shares of preferred stock and a per-share price of $60,000. Pl. Ex. 186. According to Plaintiffs, these multiple valuations and transactions are inconsistent with the per-share valuation provided by Stiefel Laboratories' appraiser, which in 2007 valued the company as a whole at $785.7 million ($14,517/share), and in 2008 at $876.6 million ($16,469/share). *See* Pl. Ex. 17 at 8; 36 at 8. The Plan Trustee, Charles Stiefel, never notified any of the Plan participants or Plaintiffs to this action of the several valuations of Stiefel Laboratories' worth.

---

[4] Plaintiffs cite the requirements for a qualified appraiser under 28 U.S.C. § 401(a)(28)(C), as well as 26 CFR 1.170A-13(5). In particular, Plaintiffs rely upon subsection (F), which states that an appraiser cannot be considered independent if "regularly used by any person, and who does not perform a majority of his or her appraisals made during his or her taxable year for other persons." 26 CFR 1.170A-13(5)(F).

Plaintiffs claim that Defendants' failure to disclose these valuations was demonstrative of their desire to sell Stiefel and to benefit improperly thereto. According to Plaintiffs, Defendants purposefully stated a diminished value for the shares of stock contained within the Plan in an effort to recapture some of those shares for their own financial gain in an eventual share of Stiefel Laboratories. According to Plaintiffs, Defendants had decided to sell Stiefel Laboratories at least since August 2007, when they received the $500 million Blackstone investment. Indeed, in their Motion for Class Certification, Plaintiffs point to certain e-mail correspondence from November 26, 2008 that shows certain of the board members knew of the per-share price that might be derived from a sale and expressed great interest in such an outcome.

To effectuate their plan, Stiefel Laboratories allegedly took certain actions which permitted it to recapture some of its issued shares. First, the company overhauled its retirement benefits program, merging the Plan with the Company's 401k and implemented the "optional diversification" program. Under the terms of that program, current employees were permitted to put their shares in Stiefel Laboratories back to the Company, where previously they were unable to take a distribution of those shares except for certain limited circumstances. The employees were encouraged to diversify their portfolios. Second, Stiefel Laboratories announced a global reduction in force. This resulted in many of the terminated employees putting their shares to Stiefel Laboratories. By the time the window closed on electing distribution, 125 people had elected to diversify their portfolios

and 66 had taken distribution.[5] The individuals who elected such distribution were
compensated at the per-share-value calculated by Stiefel's "independent" appraiser.

Plaintiffs allege that the purpose of these actions was to permit the Board and the
named Defendants to increase the value of their own shares at the Plan participants'
expense. The way in which this increase was to be realized was through a sale or merger of
Stiefel. According to Plaintiffs, negotiations regarding Stiefel's sale were ongoing through
the end of 2008 and through the beginning of 2009. However, at no time were Plaintiffs
notified of these discussions, nor of the effect of such a sale or merger upon Plaintiffs' own
holdings in the Stiefel Laboratories. Indeed, Plaintiffs allege a fraudulent cover-up by
Defendants that was created to mask the individual motives of the Board and certain
individuals in maximizing the value of their own holdings in the company.

Ultimately, Stiefel notified its shareholders of a merger with GlaxoSmithKline on or
about April 24, 2009, soon after reclaiming many of the company shares that were
previously outstanding. Under the terms of the merger agreement, GlaxoSmithKline
brought Stiefel Laboratories at a price of $65,515.29 for each share of common or preferred
stock, with an additional value of $7,186.01 based on certain contingencies. The net result
of these actions was that Stiefel "retrieve[d] the Plan participants' shares at a fraction of
their value" (DE #170 at 11), as previously calculated by Defendant Stiefel's independent
appraiser and distributed to participants in the Plan.[6]

---

[5] The Court notes that these are but some of the alleged actions designed by Stiefel to encourage Plan
participants to put their shares to the company. Tellingly, Plaintiffs also allege that Defendants were
cognizant of the financial impact of the diversifications and distributions upon the value of their own
individual stock value.

[6] The proper valuation of the shares of Stiefel Laboratories is central to Plaintiffs' claims. Defendants contend
that private equity valuations "bear no relation to the value of" Stiefel Laboratories' common stock. (DE #180
at 8, 11). Plaintiffs disagree. The Court makes no determination on this issue at this time.

## C. Proposed Classes and Representatives

Plaintiffs seek class certification. The proposed class representatives Michael Teller, Mark Palakovich, and Timothy Finnerty were all employed by Stiefel Laboratories at one time and were participants in the Employee Plan. Each of the proposed class representatives also put their shares to Stiefel Laboratories.[7] Defendants contend that at least Mr. Palakovich and Mr. Finnerty are unsuitable as class representatives, as both executed releases that Defendants contend bar their claims in this instance. (DE #180 at 6-7).[8]

Plaintiffs define and request that the following classes be certified by the Court:

Class 1

All *vested participants* in the Stiefel Laboratories, Inc. Employee Stock Ownership Plan who sold their shares or directed that the shares in their account in the Employee Plan be sold to Stiefel Laboratories, Inc. between *August 10, 2007, and October 31, 2008*, not including any of the Defendants.[9]

Class 2

All *vested participants* in the Stiefel Laboratories, Inc Employee Stock Ownership Plan who sold their shares or directed that the shares in their account in the Employee Plan be sold to Stiefel Laboratories, Inc. between *November 1, 2008, and April 20, 2009*, not including any of the Defendants.[10]

---

[7] Michael Teller twice put shares to Stiefel Laboratories. Once, on January 23, 2008, putting .070187 shares at the 2007 valuation price of $14,517 per share; and again on February 13, 2009, putting 19 shares at the 2008 valuation of $16,469. Mark Palakovich put 2.12888 shares of his stock to Stiefel on February 13, 2009, which Stiefel purchased for $16,469 per share. Timothy Finnerty had rights to 28.223099 of the Plan stock and, although he initially declined distribution, put his shares to Stiefel Laboratories on February 13, 2009, which they bought for $16,469 per share.

[8] The Court declines to address the issue of releases in greater detail at this time, given the Court's determination that class certification is inappropriate.

[9] Plaintiffs propose Michael Teller as the Class Representative for Class 1, which Plaintiffs anticipate would include 53-57 Plaintiffs.

[10] Plaintiffs propose three Class Representatives for Class 2: Michael Teller, Timothy Finnerty, and Mark Palakovich. Further, Plaintiffs anticipate approximately 191 members in Class 2.

Class 2 Subclass

All *vested participants* in the Stiefel Laboratories, Inc Employee Stock Ownership Plan who were *employees* of Stiefel Laboratories at the time they sold their shares or directed that the shares in their account in the Employee Plan be sold to Stiefel Laboratories, Inc. from *November 1, 2008 through and including April 20, 2009*, not including any of the Defendants.[11]

Additionally, Plaintiffs propose that their attorneys be designated Class Counsel.

## III.   Legal Standard for Class Certification

Certification of class actions is authorized and governed by Federal Rules of Civil Procedure 23.  Any party seeking certification bears the burden of satisfying both parts of Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997).

### A.  Rule 23(a)

As to Rule 23(a), there are four prerequisites for class certification: numerosity, commonality, typicality, and adequacy of representation.  *See* Fed. R. Civ. P. 23 (a); *Amchem Prods. Inc. v. Windsor,* 521 U.S. 591, 613 (1997); *Prado-Steiman v. Bush*, 221 F.3d 1266, 1278 (11th Cir. 2000).  However, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."  *Wal-Mart Stores, Inc. v. Dukes*, -- U.S. --, 131 S. Ct. 2541, 2551 (2010); *see also London v. Wal-Mart Stores,* 340 F.3d 1246, 1253 (11th Cir. 2003) (noting that party moving for class certification bears the burden of establishing each element of Rule 23(a)).

---

[11] At oral argument, Plaintiffs' counsel Norman Segall suggested that certain amendments might be appropriate to the proposed class definition.  However, as the Court finds that class action treatment is inappropriate, any such amendments are necessarily mooted.

A district court may certify a class only if, after "rigorous analysis," it determines that the party seeking certification has met its burden of a preponderance of the evidence. *Gen. Tel. Co. of the SW. v. Falcon,* 457 U.S. 147, 158–61 (1982). *See also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 202-04 (2d Cir. 2008) (requiring plaintiffs to meet burden by a preponderance of the evidence). If the party seeking class certification fails to satisfy any one of the Rule 23 requirements, then the case may not continue as a class action. *Jones v. Roy,* 202 F.R.D. 658, 662 (M.D. Ala. 2001).

In reviewing a motion for class certification, the court generally is bound to take the substantive allegations of the complaint as true. *Moreno Espinosa v. J & J AG Prods., Inc.,* 247 F.R.D. 686 (S.D. Fla. 2007). However, the court may look beyond the pleadings to determine whether the requirements of Rule 23 have been met. *Vegas v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1264 (11th Cir. 2009). In making that assessment, the Court may not consider the plaintiffs' likelihood of success on the merits, although some consideration of the merits may often be necessary. *Compare Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-78 (1974); *and Kirkpatrick v. J.C. Bradford & Co.,* 87 F.2d 718, 722-23 (11th Cir. 1987); *with* Dukes, 131 S. Ct. at 2551 n.6 (noting that "[f]requently a 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim"); *and Love v. Turlington,* 733 F.2d 1562, 1564 (11th Cir. 1984) (holding that the *Eisen* doctrine should not be "talismanically invoked to artificially limit a trial court's examination of the factors necessary to a reasoned determination of whether a plaintiff has met her burden of establishing each of the Rule 23 class action requirements").

In their Opposition to Class Certification, Defendants devote a significant amount of attention to the merits of Plaintiffs' claims. Defendants state that none of their own actions

were taken with improper motive or were in any way motivated by anything other than the best interests of Stiefel Laboratories. Additionally, according to Defendants, a factual timeline of the actions their actions undermines Plaintiffs' claims. (DE #180 at 7-19). So, for instance, Defendants state that their decision to merge the EBSP and the 401(k) plan was a result of a 2007 external recommendation from a consulting firm, Towers Perrin, which would permit Stiefel Laboratories to become "current" with best practices. (DE #180 at 13). The Board did not formally approve the merger of the EBSP and the 401(k), with its concomitant effects, until May 29, 2008. And, Defendants claim, Charles Stiefel, Todd Stiefel, and Brent Stiefel only realized on or about February 20, 2009 "that the reduction in shares from the current and former ESBP participants' recent put elections would proportionately increase the per share [sic] value all remaining shareholders ... would receive if there ever was to be a sale." (DE #170 at 17). Thus, Defendants contends there could have been no breach of fiduciary duty or of any of their obligations under ERISA. This argument is representative of some of the issues raised by Defendant in its Response.

However, as noted above, a court when considering class certification must limit its consideration of the relative merits of a plaintiff's claims. *Kirkpatrick*, 87 F.2d at 722-23. Therefore, the first issue before the Court in considering the Motion for Class Certification is whether Plaintiffs have met their burden under Rule 23(a). *See, e.g.*, *London*, 340 F.3d at 1253 (affirmative burden is on plaintiff); *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n.16 (11th Cir. 2003) (same).

### (i)    Numerosity

Rule 23(a)(1) requires that "the class is so numerous that joinder of all members is impracticable." Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class. *Hammett v. Am. Bankers Ins. Co. of Fla.*, 203 F.R.D. 690, 694 (S.D. Fla. 2001). Certainly, such factors as size of the class and geographic location of the would-be class members are relevant to any consideration of practicality. *In re Recoton Corp. Secs. Litig.*, 248 F.R.D. 606 616, 617 (M.D. Fla. 2006). However, the focus of the numerosity inquiry is not whether the number of proposed class members is "too few" to satisfy the Rule, but "whether joinder of proposed class members is impractical." *Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D. Fla. 1986). Parties seeking class certification do not need to know the "precise number of class members," but they "must make reasonable estimates with support as to the size of the proposed class." *Fuller v. Becker & Poliakoff, P.A.,* 197 F.R.D. 697, 699 (M.D. Fla. 2000). In general terms, the Eleventh Circuit has found that "less than twenty-one [prospective class members] is inadequate, [while] more than forty [is] adequate." *Cheney v. Cyberguard Corp.,* 213 F.R.D. 484, 490 (S.D. Fla. 2003) (quoting *Cox v. Am. Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986)). Thus, the "sheer number of potential class members may warrant a conclusion that Rule 23(a)(1) is satisfied." *LaBauve v. Olin Corp.,* 231 F.R.D. 632, 665 (S.D.Ala. 2005) (citing *Bacon v. Honda of Am. Mfg., Inc.,* 370 F.3d 565, 570 (6th Cir.2004)).

In support of numerosity, Plaintiffs estimate that their proposed class would include approximately 242 individuals, many of whom are geographically distant either because of Stiefel Laboratories' own far-flung holdings or because of subsequent re-locations. (DE

#170 at 20). Defendants do not seemingly contest that the numerosity requirement is satisfied.

As this Court is required to do even where a requirement for class certification is not satisfied, it has independently considered the prospective numerosity of the putative class members. *See Valley Drug Co.*, 350 F.3d at 1188 (noting court's independent obligation to examine elements of Rule 23); *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n.37 (11th Cir. 2003) (same). The proposed number of class members easily exceeds the minimum threshold recognized by the Eleventh Circuit. More importantly, joinder of the proposed class members would be impractical, given the number of class members and their geographic distribution. As such, Plaintiffs have met their numerosity burden under Rule 23(a)(1).

### (ii)    Commonality

The next factor under Rule 23(a) is commonality. This prerequisite requires that there be at least one issue common to all members of the class, and that any class certification be predicated on "questions of law or fact common to the class." Notably, it "does not require that all of the questions of law or fact raised by the case be common to all the plaintiffs." *Walco Invs., Inc. v. Thenen,* 168 F.R.D. 315, 325 (S.D.Fla.1996). However, "a class action must involve issues that are susceptible to class-wide proof." *Cooper v. S. Co.,* 390 F.3d 695, 713 (11th Cir. 2004), *overruled in part on other grounds by Ash v. Tyson Foods, Inc.,* 546 U.S. 454, 457-58 (2006). The commonality element is generally satisfied when a plaintiff alleges that "[d]efendants have engaged in a standardized course of conduct that affects all class members." *In re Terazosin Hydrochloride,* 220 F.R.D. 672, 687 (S.D. Fla. 2004); *Agan v. Katzman & Korr, P.A.,* 222 F.R.D. 692, 697 (S.D. Fla. 2004); *In re AmeriFirst*

14

*Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla.1991).  It is particularly noteworthy that, where a "common scheme of deceptive conduct" has been alleged, the commonality requirement should be satisfied.  *In re Recoton*, 248 F.R.D. at 618.

Plaintiffs contend that the commonality requirement of Rule 23(a) is met by the "series of misstatements and omissions" made by the individual Defendants regarding the value of Stiefel Laboratories' common stock, in addition to Defendants' efforts to increase the value of their own shares at the expense of the proposed class members.  In support of this claim, Plaintiffs point to the price-per-share of Stiefel's common stock, both as it was determined by Stiefel Laboratories' independent appraiser and as that price was reflected in Stiefel's eventual merger with GlaxoSmithKline.  Additionally, Plaintiffs point to an alleged breach of fiduciary duty by Defendants in regards to the Employee Plan as evidence of a common scheme of deceptive conduct that satisfies the commonality requirement of Rule 23(a)(2).[12]

Defendants contest the issue of commonality, stating that the multitude of necessary individual inquiries vitiates the purpose behind class certification.  Defendants' arguments as to commonality and typicality turn on whether a factually intensive inquiry would be required.  (DE #180 at 33).[13]  Defendants contend that "there are a variety of claims being asserted against different Defendants, with different fiduciary duties and responsibilities

[12] Plaintiffs name an additional 12 common questions of law or fact in support of their Motion.  (DE #170 at 22-23).  For purposes of convenience, the Court does not address those common questions here as it finds the commonality requirement is satisfied by the alleged common scheme of devaluing the Plan participants' shares in relation to the eventual per-share sale price of Stiefel Laboratories.

[13] Defendants' Opposition tracks the requirements of Rule 23(b) before addressing Rule 23(a).  However, because Rule 23(a) is the gateway consideration, the Court finds that some of Defendants' contentions raised under Rule 23(b) are equally applicable to consideration of the requirements of Rule 23(a).  So, for example, Defendants' contention as to commonality merges with its contentions regarding Rule 23(b)(3)'s superiority requirement.

during different periods of time, which makes this class unmanageable as a class action."
*Id.* Additionally, because Defendants contend that certain of the named representatives
executed releases of their claims, any claims they may have are not common to those of the
proposed class members. *Id.* at 35. As a result, Defendants argue that the necessary
inquiry into the extent of individualized releases by the putative class members would
dominate the proceedings and vitiate commonality. *Id.*

Although the Court finds that Defendants' contentions have merit, under the
relatively low standard required under Rule 23(a), Plaintiffs have satisfied their burden as
to commonality. Certainly, as noted under Rule 23(a), not all questions of law or fact need
be common. *Cf. Walco*, 168 F.R.D. at 325. Instead, even a single common question is
sufficient to satisfy Rule 23(a)(2). *See Powers v. Stuart-James Co.*, 707 F. Supp. 499, 502
(M.D. Fla. 1989). Plaintiffs' allegations meet this minimal threshold. *Accord In re Terazosin
Hydrochloride*, 220 F.R.D. 672 at 687.

### (iii) Typicality

The third factor under Rule 23(a)(3), typicality, requires that "the claims or
defenses of the representative parties [be] typical of the claims or defenses of the class."
Fed.R.Civ.P. 23(a)(3); *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985). Like the
commonality requirement, the typicality requirement is permissive: representative claims
are 'typical' if they are reasonably co-extensive with those of absent class members; they
need not be substantially identical. *Brown v. SCI Funeral Servs. of Fla., Inc.*, 211 F.R.D. 602,
605 (S.D. Fla. 2003). Moreover, if "the same unlawful conduct was directed at or affected
both the class representatives and the class itself, the typicality requirement is usually met
irrespective of varying fact patterns which underlie the individual claims." *Davis v. S. Bell*

*Tel. & Tel. Co.*, No. 89-2839, 1993 WL 593999, *4 (S.D. Fla. Dec. 23, 1993).  To defeat

typicality, a defendant must show that conflict between the named representatives and the

class members is "such that the interests of the class are placed in significant jeopardy."

*Walco*, 168 F.R.D. at 326.

Plaintiffs argue broadly that the typicality requirement is satisfied because the class

representatives suffered from the same harms as did the proposed members.  In particular,

Plaintiffs point out that both the representatives and the putative class members suffered

in a similar fashion from Defendants' undervaluation of Stiefel's shares, as well as the way

in which that undervaluation was eventually revealed by Defendants' own dealings and

eventual sale. (DE #170 at 24).  Plaintiffs claim that it is Defendants' scheme to undervalue

the shares of Plaintiffs that makes the representatives' claims identical to those of the

proposed class members.  Moreover, Plaintiffs further urge that these claims do not vary

across classes because, regardless of when the shares were sold, a fractional value of their

worth was obtained.

Defendants contest typicality, stating that inherent contradictions within Plaintiffs'

disparate claims necessitate individual proof and election. In particular, Defendants state

that Counts 3 and 4 of the Second Amended Complaint, stating claims under ERISA and

securities fraud, respectively, will require individual determination as to requested relief,

or, in the Defendants' words, "[t]he named Plaintiffs cannot represent both interests

because the two theories are mutually exclusive and require the presentation of different

evidence and arguments." (DE #180 at 37).

While the Court is conscious of the differences raised by Defendants, it is also

conscious of the fairly lenient requirements of typicality under Rule 23(a).  There need not

be complete identity of claims in a class action.  Instead, the claims must only be reasonably

co-extensive.  *SCI Funeral*, 212 F.R.D. at 605.  Where, as here, both the named

representatives and the putative class members were alleged victims of uniform

misrepresentations and omissions by Defendants, typicality cannot be a hurdle to

certification.  Therefore, Plaintiffs have borne their burden under Rule 23(a) as to

typicality.

### (iv)   Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately

protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The two questions considered

when determining the adequacy of representation are:

> (1) Do either the named plaintiffs or their counsel have any conflicts of interest with other class members; and
>
> (2) Will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

*Kirkpatrick*, 827 F.2d at 726.

### a.  Conflicts of Interest

Plaintiffs contend that "[t]here are no conflicts between or among [the named

Plaintiffs] and members of the respective Classes."  (DE #170 at 25).  According to them,

each member of the respective classes will possess similar claims against Defendant,

sounding both in statutory and common law, because of Defendants' alleged scheme to

devalue the value of the class members' shares.

Moreover, Plaintiffs rely upon the experience of their counsel as evidence that no

conflict of interest exists or will develop between any of the proposed class members or

their counsel.  Plaintiffs are represented by Beth-Ann Krimsky and Richard Serafini of

Ruden McClosky P.A., and Normal S. Segall and Melissa Alagna of Segall Gordich P.A.
Ruden McClosky has a lengthy history of representing sizeable clients in class action
litigation, as well as certain instances of its attorneys being certified as plaintiffs' class
counsel in other cases in the Southern and Middle Districts of Florida.  (DE #170 at 15-16).
The relevant attorneys of Segall Gordich were formerly attorneys at Ruden McClosky, who
departed the firm in April 2010 after the above-styled matter was filed.  (DE #170 at 16).
In particular, Norman Segall has some prior involvement with litigation involving a
valuation of Stiefel Laboratories' stock, and has previously been involved in class actions in
state court.  (DE #170 at 16).  Aside from the April 2010 departure of the lawyers of Segall
Gordich's from Ruden McClosky,[14] Plaintiffs state there is no evidence of any conflict
amongst proposed class counsel.

Defendants disagree, contending that a possible conflict of interest exists between
the Plaintiffs' attorneys.  Specifically, they filed a Motion for Leave to Supplement Response
in Opposition to Plaintiffs' Motion for Class Certification (DE #235) on July 11, 2011.  In
broad terms, Defendants argued that proposed class counsel, Norman Segall, has a conflict
in his representation of any proposed class due to his representation of others in individual
suits against similar defendants on substantially the same grounds.  In particular,
Defendants note that one of Mr. Segall's clients is a former director on Stiefel Laboratories'
board, and as such may be liable for the very same actions that are now the subject of this
lawsuit.  Counsel for Plaintiffs state that there is no conflict in this representation and, even

---

[14] The Court makes no determination regarding the catalyst for Mr. Segall's and his Segall Gordich colleagues'
departure from Ruden McClosky.  Instead, their departure from Ruden McClosky is only emphasized because
of the Court's obligation to inquire into any possibility of conflict of interest that might affect the adequacy of
Plaintiffs' representation.

if there were, Ruden McClosky would be able to continue representation of Plaintiffs in Mr. Segall's absence.

Additionally, Defendants question whether there may be a conflict of interest involving the proposed class representatives. For example, they argue that Michael Teller is inappropriate as a class representative, since his standing differs from that of his fellow Class 1 members. Particularly, Defendants note that, unlike at least 23 of the potential 53 putative Class 1 members, Mr. Teller has not signed a release. Given this distinction, Defendants implicitly contend that there is a conflict of interest between Teller and those he would seek to represent.

While the parties have briefed these issues and recently participated in an oral argument in part on the same basis, the Court finds that they are insufficiently developed at this time. Although it would normally be advisable to determine whether Rule 23(a) is satisfied prior to consideration of Rule 23(b), *Jones,* 202 F.R.D. at 662, the Court finds here that determining whether a potential conflict may exist is obviated by the Court's holding under Rule 23(b), detailed below.

### b. Vigorous Prosecution

As to the second prong of the inquiry into adequacy, Plaintiffs claim that vigorous prosecution is assured. They note that, since the time of this case's filing, the proposed Class Representatives have their evidenced their interest in vigorously prosecuting this matter. In particular, they have "monitor[ed] the litigation and actions ..., review[ed] drafts of complaints and/or other pleadings ..., review[ed] pleadings of the Defendants ..., travel[ed] to South Florida for their depositions ..., produc[ed] documents and information

20

..., [and] respond[ed] to Requests for Production of Documents, Subpoenas and Interrogatories." (DE #170 at 25-26).

Defendants argue that the proposed class representatives are incapable of vigorous prosecution because they do not understand the class action structure. Citing *Shiring v. Tier Techs., Inc.*, 244 F.R.D. 307, 315 (E.D. Va. 2007) for the proposition that the "honesty, conscientiousness, and other affirmative personal qualities" are relevant to any determination of adequacy (DE #180 at 38), Defendants point to several deposition statements by Mssrs. Palakovich, Teller, and Finnerty as evidence that they do not understand their would-be role as class representatives. Additionally, Defendants again state that Mr. Segall's representation of other individual plaintiffs may interfere with his vigorous prosecution of this matter.

While courts generally hold that a class representative need only have "working knowledge" of the case, *see, e.g., Buford v. H & R Block, Inc.*, 168 F.R.D. 340 (S.D. Ga. 1996), class certification will not be prevented solely on that basis unless the representatives "participation is so minimal that they virtually have abdicated to their attorneys the conduct of the case." *Kirkpatrick*, 827 F.2d at 728. Thus, the threshold of knowledge required to qualify a class representative is low.

Here, the fact that class representatives are familiar with the basis for the suit and their responsibilities as lead plaintiffs is sufficient to establish their adequacy. Plaintiffs offer ample evidence that the putative class representatives are familiar with both the basis for the suit and their responsibilities as Lead Plaintiffs. The putative class representatives have testified as to their understanding of the facts and legal questions at issue. Moreover, they have evidenced their awareness of the vehicle of class action and their understanding

of their responsibilities as lead plaintiffs in such an action, including the responsibility to determine whether to accept a proposed settlement or go to trial.

Additionally, Plaintiffs' Motion for Class Certification contends that their proposed counsel, with their experience in the field of securities litigation, ERISA, complex financial issues, and class action matters, will assist in vigorous prosecution of Plaintiffs' claims. In support of this claim, the Motion points to the extensive litigation that has transpired prior to this point, including extensive investigation, discovery, and preparation of Plaintiffs' claims. Defendants contest whether Plaintiffs' counsel can vigorously prosecute Plaintiffs' claims, given the same alleged conflict in counsel's representation of diverse Plaintiffs.

For the same reason noted above in discussing whether a conflict of interest exists, the Court finds that it need not pass on the issue of vigorous prosecution at this time, given its findings relevant to Rule 23(b) certification below.

## B. Rule 23(b) Certification

In addition to meeting the requirements under Rule 23(a), Plaintiffs must establish that one or more of the grounds for maintaining the suit as a class action are met under Rule 23(b).[15] Plaintiffs seek certification under Rule 23(b)(3). Thereunder, a plaintiff bears the burden of demonstrating two requirements are met: 1) predominance of the questions of law or fact common to the members of the class over any questions affecting only individual members; and 2) superiority of class action for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3); *Amchem*, 521 U.S. at 625. Rule 23(b)(3) further specifies four areas of inquiry relevant to both predominance and

---

[15] The Court is cognizant that there is no need for inquiry into Rule 23(b) if Rule 23(a) has not been satisfied. Fed.R.Civ.P. 23(b) ("A class action may be maintained if Rule 23(a) is satisfied and ..."). Nonetheless, the Court finds that Rule 23(b)'s requirements are dispositive here and trump any alleged deficiency regarding the adequacy of class counsel or class representatives under Rule 23(a).

superiority: i) class members' interest in individually controlling the prosecution or defense of separate actions; ii) the extent and nature of any litigation concerning the controversy already begun by or against class members; iii) the desirability or undesirability of concentrating the litigation of the claims in a particular forum; and iv) the likely difficulties in managing a class action.  Fed.R.Civ.P. 23(b)(3)(a)-(d).

### 1. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *AmChem,* 521 U.S. at 623. The question of predominance presumes the overriding existence of common issues; thus, a mere showing of commonality as in Rule 23(a) is not enough. *Hanlon,* 150 F.3d at 1022; *see also AmChem,* 521 U.S. at 624-25 (predominance criterion is "far more demanding" than Rule 23(a)'s commonality requirement).  Predominance focuses on the relationship between the common and individual issues. *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989); *Hanlon,* 150 F.3d at 1022. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

Plaintiffs contend that the three following common questions of law and fact predominate over any individual questions of law or fact:

(1) Whether the Defendants caused, or took advantage of, the merger or amendment of the Employee Plan for the purpose of obtaining for their benefit the value of the Company Stock held by the Employee Plan participants upon the sale of the Company or following the significant Blackstone Investment into the Company;

(2) Whether the Defendants failed disclosure to the appraiser prior to the completion of the 2008 Annual Valuation that Company management either had or intended to enter into negotiations for the sale of the Company; and

(3) Whether Charles Stiefel, and later Karasick, as the Employee Plan Trustee, failed to exercise good faith in determining the fair market value of Company Stock at the time it was sold to the Company on behalf of the Employee Plan participants.

(DE #170 at 29).  Additionally, Plaintiffs identify other common questions of fact specific to

Count I,[16] Count 2,[17] and Count 3,[18] and Count 4.[19] (DE #170 at 29-30).  Finally, Plaintiffs

claim that other common questions of law or fact also include factual issues pertinent to

whether Defendants materially represented anything relevant to underlying facts at issue,

the materiality of those facts, Plaintiffs' reliance on Defendants' representations,

Defendants' intent underlying their representations, and any resulting damages.

The bulk of Defendants' Opposition is devoted to contesting the predominance of

Plaintiffs' claims across their proposed classes.  Generally, Defendants argue that "Plaintiffs'

class definitions [] seek to lump together incongruous claims and issues in the same

classes."  (DE #180 at 4).  For example, Defendants state that with respect to the ERISA

claims contained within Counts 1-3 of the Amended Complaint, "each Defendant had

---

[16] Plaintiffs identify two common questions of fact as to Count 1: 1) whether the fiduciary Defendants breached their duties to the Plan participants by allowing sale of employee shares for below-market value; and 2) whether Defendants breached their fiduciary duties through their administration of the Plan.

[17] Related to the common questions identified as to Count 1, Plaintiffs states that Count 2 also has common questions which transcend class membership: whether the named Defendants were co-fiduciaries pursuant to ERISA, and whether Defendants breached their duty thereunder.

[18] There are four common questions arising from Count 3 according to Plaintiffs: 1) Stiefel Laboratories' status as a party-in-interest pursuant to ERISA; 2) whether Stiefel Laboratories is a "disqualified person" within the meaning of ERISA; 3) whether the Plan sold shares as part of a diversification program; and 4) whether the Company and Plan engaged in transactions that were prohibited because of the Company's status as a party in interest.

[19] Because Count 4 of their Amended Complaint pertains to securities fraud, Plaintiffs claim that the alleged individual misrepresentations made by Defendants are common to all class members.

different duties and responsibilities, during different time periods, involving different knowledge and alleged acts or omissions, and raising different defenses." (DE #180 at 2).

Notwithstanding those differences however, it seems clear upon review of the parties' legal briefs that one of the greatest barriers to class certification is the issue of reliance. Reliance is a required element of Plaintiffs' claims. *See, e.g., Ross v. Bank South, N.A.,* 885 F.2d 723, 728 (11th Cir. 1989) (en banc) (finding proof of reliance necessary in Rule 10(b)-5 claim context); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.,* 443 F.3d 1330, 1341-45 (11th Cir. 2006) (noting importance of proof of individual reliance even in some ERISA contexts); *Hudson v. Delta Air Lines, Inc.,* 90 F.3d 451, 457 (11th Cir. 1996) (same). Therefore, a central question for this Court to address is whether class certification is appropriate where, as here, proof of individual reliance may be necessary.

a) Parties' Arguments on Reliance

Plaintiffs urge the Court to find that determination of reliance need not require individual inquiry. Instead, Plaintiffs rely upon three instances in which courts will presume reliance: omission, "fraud on the market", and "common scheme or plan." (DE #170 at 31). Specifically, Plaintiffs seek a presumption under the first and third instances.[20] (DE #170 at 31-32). *Cf. Kirkpatrick v. J.C. Bradford & Co.,* 827 F.2d 718, 724 (11th Cir. 1987); *Cavalier Carpets, Inc. v. Caylor,* 746 F.2d 749, 756-57 (11th Cir. 1984); *Walco,* 68 F.R.D. at 330-31.

Under the former, a plaintiff is entitled to a presumption of reliance where a defendant who "had an affirmative duty to disclose stood mute, leaving plaintiffs with absolutely nothing upon which to rely." *Caylor,* 746 F.2d at 755. The first case to so hold

---

[20] The parties agrees that any presumption for"fraud on the market" is inapplicable here.

was *Affiliated Ute Citizens of Utah v. United States*.  In that case, the Supreme Court permitted a classwide presumption of reliance, and further held that such a presumption is appropriate in cases involving "primarily" omissions.  406 U.S. 128, 153-54 (1972).  Although the Eleventh Circuit has permitted the *Affiliated Ute* presumption to extend in certain circumstances involving cases that predominantly allege fraudulent omissions, it has refused to extend the presumption to cases involving mixed allegations of omissions and misrepresentations.  *See, e.g., Caylor*, 746 F.2d at 756.  Nonetheless, the inquiry in any such instance necessarily centers on whether the case is "primarily" one of omission or of misrepresentation.  *Kennedy v. Tallant*, 710 F.2d 711, 717-18 (11th Cir. 1983).

Alternatively, under the theory of a "common scheme," a presumption may be permitted where defendants are alleged to have engaged in a common scheme to defraud. *Kirkpatrick*, 827 F.2d 718, 721-22 (11th Cir. 1987).  One example of such a case is *Kennedy v. Tallant*,[21] which held that there was no need to prove individual reliance where the defendants "committed the same unlawful acts in the same method against the entire class." *Kennedy*, 710 F.2d at 717.  As such, class certification under Rule 23(b)(3) was

---

[21] In *Kennedy*, several individuals – Tallant, Womack, and Erwin – organized a corporation for the purpose of buying, selling, and developing real estate.  Under the corporation's charter, there were two classes of stock: class A, of which 8 million shares were authorized; and class B, of which there were two million shares.  The corporate charter stated the three of the five board members would be elected by the class B shareholders, of which no shares had been offered to the public.  Salesmen were employed by the corporation to offer shares of class A only, eventually selling over seven million shares at a price ranging from $.10/share all the way to $5.00/share, providing prospectuses to interested buyers.  An individual shareholder filed suit after reading a newspaper article that questioned the legitimacy of the corporation's activities: the basis for the suit was an alleged conspiracy by Tallant, Womack, and Erwin to defraud the public and to enrich themselves by the sale of securities. *Id.* at 714.  In part, the complaint was predicated upon the defendants' ability to retain indefinite control over the corporation, the disparate amount paid for each share of stock, and the inflated price of the public offerings of class A stock. *Id.*  Although defendants countered that there was no fraud where the prospectuses disclosed the structure of the corporation, the trial court found instead that the corporation's "stock offerings and sales were part of a complex scheme to defraud the public." *Id.* at 716.

appropriate, notwithstanding the defendants contention that the court must consider the different circumstances of the individual stock purchases. *Id.* at 718-19.

Defendants object to any presumption of reliance being granted to Plaintiffs. First, they contend that Plaintiffs' invocation of the *Affiliated Ute* presumption is unwarranted "in a Rule 10b-5 case when the plaintiff alleges both nondisclosures and positive misrepresentations instead of only nondisclosures as in *Affiliated Ute*." (DE #180 at 22) (citing *Kirkpatrick*, 827 F.2d at 722). *See also Caylor*, 746 F.2d at 755 (recognizing limited reach of *Affiliated Ute* presumption"). Defendants argue that because Plaintiffs largely allege affirmative misrepresentations rather than nondisclosures, permitting the *Affiliated Ute* presumption would be improper. (DE #180 at 22). In support, Defendants cite *Camden Asset Management, L.P. v. Sunbeam Corp.*, No. 99-8275, 2001 WL 34556527 (S.D. Fla. July 3, 2001) for the proposition that in such an instance, individual inquiry into reliance precludes class certification. (DE #180 at 24-25).

*Camden* involved a corporation, Sunbeam, which had offered a convertible debenture coupon to raise capital for the recent acquisition of three other companies. 2001 WL 34556527, *1. The offering was valued at $750 million, and was supported by certain materials sent forth to investors that indicated that "the acquisition of these companies would triple annual revenues and raise Sunbeam's market capitalization to seven billion dollars." *Id.* Plaintiffs, sophisticated institutional investors, purchased the offering but later brought suit, alleging that the "offering was made pursuant to fraudulent financial statements that artificially inflated the price of the debenture coupons and common stock by essentially manufacturing corporate earnings." *Id.* The plaintiffs' claims survived the motion to dismiss stage and eventually the plaintiffs moved to certify a class.

The Honorable Donald M. Middlebrooks, in considering whether class certification was

appropriate, honed in on reliance as an essential element to the plaintiffs' claims. After

determining that "individualized treatment is necessary in terms of assessing why

investors bought and sold these debentures and whether these investors lost money on

their [purchases]," 2001 WL 34556527, *15, Judge Middlebrooks concluded that class

issues did not predominate to the extent required by Rule 23(b)(3).

Similarly, Defendants would have this Court hold that Plaintiffs cannot rely upon the

*Affiliated Ute* presumption. According to Defendants, the following four inquiries demand

individual attention and proof:

    i.  each alleged misrepresentation or omission about which the particular
        participant was aware;
    ii.  when each participant became aware of the alleged misrepresentation or
        omission;
    iii.  what action, if any, the participant took in reliance upon the
        misrepresentation or omission; and
    iv.  what other facts or information the participant considered in making his
        decision to sell his shares to SLI.

(DE #180 at 21). The net result of Defendants' position is that the Court would be required

to consider the context of each alleged misrepresentation or omission to determine the

capacity in which those statements were made (DE #180 at 21-22), which Defendants'

claim would undermine the predominance of class action treatment of Plaintiffs' claims.

    b)  Discussion

Upon consideration, the Court finds that both parties' stated arguments have merit,

but that Rule 23(b)(3) is unequivocal: any class action certified thereunder must be

capable of resolution on a class-wide basis. Notwithstanding Plaintiffs' allegations of a

"common scheme" here, the Court finds that individual issues predominate over those of the class.

First, it is clear that Plaintiffs are not entitled to the *Affiliated Ute* presumption. Plaintiffs' Second Amended Complaint clearly involves mixed allegations of misrepresentations and omissions.  Plaintiffs have even conceded that "Defendants' violations of the securities laws are based on a series of misstatements and omissions regarding the value of Stiefel Laboratories' common stock and the fact and status of the Defendants' efforts to sell the Company or all of its stock." (DE #170 at 21).  Similarly, the Amended Complaint itself is rife with references to the misrepresentations purportedly made by Charles Stiefel and other Defendants.  (DE #47 ¶¶ 78, 97, 102, 103).  Although Plaintiffs' claims may be predicated in large part upon the Defendants' omissions, the pleadings indicate that the omissions are inextricably intertwined with the alleged misrepresentations.  Accordingly, there can be no *Affiliated Ute* presumption of reliance in a case of such mixed allegations.  *See Kirkpatrick*, 827 F.2d at 722.

Nor is a presumption of reliance due on the strength of Plaintiffs' allegations of a "common scheme" at issue. As noted by the Eleventh Circuit in *Kennedy*, where defendants take "the same unlawful acts in the same method against an entire class," *Kennedy*, 710 F.2d at 717, Rule 23(b)(3) may be satisfied.  However, as noted by Defendants, such a presumption is inappropriate in circumstances such as these.  For example, *Kennedy* was appropriate for a presumption of reliance in large part because there was a common scheme to encourage individuals to buy shares of stock.  In the absence of such a scheme and given perfect knowledge, no right-minded investor would have invested in the shares

at issue in that case. *Id. See also* Caylor, 746 F.2d at 752-54 (noting alleged fraud in the procurement of shares of stock).

Here, because of the factual circumstances at issue, the inquiry into a "common scheme" is more nuanced. Plaintiffs argue that Defendants' misrepresentations and omissions have been uniform. However, Plaintiffs subsequent actions in reliance upon those misrepresentations cannot be similarly uniform across the proposed classes. At the heart of their claims, Plaintiffs seek recovery for damages suffered after individual decisions to put shares to Stiefel Laboratories, even though individual determinations made in reliance upon Defendants' omissions and misrepresentations likely varied with each individual's needs. Plaintiffs ignore this hurdle, asking the Court to presume reliance on Defendants' omissions and misrepresentations as the basis for each of the Plaintiffs' individual determinations to retain or to put shares to Stiefel Laboratories. "This, in effect, places on the defendants the burden of proving plaintiff's nonreliance, that is, proving that the plaintiffs' decision would not have been affected even if defendants had disclosed the omitted facts." *Caylor*, 746 F.2d at 753-54 (citing *Rifkin v. Crow*, 574 F.2d 256, 261-62 (5th Cir. 1978)).[22]

Although such omissions and misrepresentations may indeed be the foundation for any such decision, they need not be. Questions of reliance, investment strategy and damages necessitate individual inquiry. Investing decisions, particularly in a volatile market as existed at the end of 2008 and during difficult corporate conditions as may have existed with Stiefel Laboratories, are personal and cannot be presumed. *Rifkin*, 574 F.2d at

---

[22] Of course, the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

261 (noting that an investor who makes his own investment decisions is not due a presumption); *Simon v. Merrill Lynch, Pierce, Fenner & Smith*, 482 F.2d 880. 882 (5th Cir. 1973) (noting if there is "any material variation in the representations made or in the degrees of reliance thereupon, a fraud case may be unsuited for treatment as a class action."). Simply put, for a case largely predicated on alleged fraud, class treatment is inappropriate in the context of investment decisions take in reliance upon that fraud. Indeed, any other result would effectively eviscerate the element of reliance from any fraud claim, which is essentially what Plaintiffs' claims are.  (DE #193 at 3 n.2).

Accordingly, the Court finds that Plaintiffs' proposed class claims do not predominate over the areas of individual inquiry necessitated under the facts at issue here. In so finding, the Court echoes Judge Middlebrook's concern a decade ago, when he wrote that the presumption of "classwide reliance ... threaten[s] to reduce the certification process into a virtual rubber stamp of approval irrespective of the financial markets, instruments, and circumstances at issue." *Camden*, 2001 WL 34556527 at *16-17.  Where individual proof of reliance is appropriate, class certification likely is not.

### 2. Superiority

Finally, the Court now turns to the issue of superiority under Rule 23(b)(3).  The four factors identified by Rule 23, *see Walco*, 168 F.3d at 337, require the court to focus on the efficiency and economy elements of the class action so that cases allowed under subdivision (b)(3) are those that can be adjudicated most profitably on a representative basis. *Id.* Notwithstanding Plaintiffs' contention that class action is superior to separate actions for each member of the putative class, the Court cannot agree.

31

When considered in light of Rule 23(b)(3), the Court finds that Plaintiffs have not met their burden in demonstrating superiority of class action. As to the first two factors identified in *Walco*, it is clear that some would-be class members have an interest in controlling their personal litigation, as plaintiffs Fried, Bacon, and 100079 Canada, Inc. have filed substantially the same claims. Moreover, while such litigation is in its early stages, the individual considerations underlying the filing of those claims, in particular the personal circumstances of each of those plaintiffs which made them inappropriate for class treatment, counsels in favor of individual action.

Moreover, for other reasons of proof, the Court finds that individual actions are a superior vehicle for recovery. Where, as here, Plaintiffs' allegations are predicated on claims of fraud, individual showings of proof are appropriate. Requiring each individual Plaintiff to detail any relevant omissions and misrepresentations pertinent to them alone— as well as the resulting decision as to whether to put the Stiefel Laboratories' shares to the company—will result in more desirable individualized treatment.

Nor will such individualized treatment prevent Plaintiffs from pursuing their claims. These claims, unlike many others that provide the basis for class action treatment, involve substantial monetary damages. So, for instance, Plaintiffs seek recovery for the difference in between the value of the shares when put to Stiefel Laboratories prior to the merger with GlaxoSmithKline. This is not a miniscule amount, as the difference in pre-merger value is approximately $50,000. This amount-in-controversy will likely ensure both that individual Plaintiffs obtain adequate representation, and also permit many of the proposed class members to proceed in federal court on the basis of diversity if they so desire.

32

While class treatment would, of course, provide uniformity to any final determination, such treatment would necessarily sacrifice individual inquiry. Accordingly, the Court finds that class action treatment is not superior to individualized inquiry under the circumstances at issue here. Therefore, Plaintiffs have failed to meet their burden under Rule 23(b).

### IV.    Conclusion

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED,** and **DECREED** that Plaintiffs' Motion for Class Certification (DE #170) is **DENIED.** It is further **ORDERED** that all pending motions relevant to class certification (#211, #235, #242, #247) are hereby **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse, Miami, Florida, this 21st day of July, 2011.

JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

cc:

**Counsel for Plaintiffs**
**Beth-Ann Ellenberg Krimsky**
Ruden McClosky Smith Schuster & Russell
200 E Broward Boulevard
15th Floor PO Box 1900
Fort Lauderdale, FL 33302-1900
954-764-6660
Fax: 333-4027
Email: beth-ann.krimsky@ruden.com

33

**Norman S. Segall**
Segall/Gordich P.A.
801 Brickell Avenue
Suite 900
Miami, FL 33131
305-755-4930
Fax: 305-438-7438
Email: nss@segallgordich.com

**Melissa Alagna**
Ruden McClosky Smith Schuster & Russell
701 Brickell Avenue
Suite 1900
Miami, FL 33131
Email: mma@segallgordich.com

**Counsel for Defendants**
**David A. Coulson**
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
305-579-0500
Fax: 305-579-0717
Email: coulsond@gtlaw.com

**Hilarie Bass**
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
305-579-0745
Fax: 579-0717
Email: bassh@gtlaw.com

**Monica Janette Chaplin**
Greenberg Traurig, P.A.
333 Avenue of the Americas
Miami, FL 33131-3238
305-579-0648
Fax: 305-961-5517
Email: ChaplinM@gtlaw.com

**Lindsey Camp Edelmann**
Greenberg Traurig LLP
3290 Northside Parkway
Suite 400
Atlanta, GA 30327
678-553-2100
Fax: 678-553-2212
Email: edelmannl@gtlaw.com

**Todd D. Wozniak**
Greenberg Traurig
3290 Northside Parkway
The Forum Suite 400
Atlanta, GA 30327
678-553-2100
Fax: 678-553-2212
Email: wozniakt@gtlaw.com

**Deborah Poore FitzGerald**
Walton Lantaff Schroeder & Carson
110 E Broward Boulevard
Suite 2000
Fort Lauderdale, FL 33301
954-463-8456
Fax: 763-6294
Email: dfitzgerald@waltonlantaff.com