UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-21871-CV-KING

JAMES A. BACON, et al.,

    Plaintiffs,

v.

STIEFEL LABORATORIES, INC., et al.,

    Defendants,
_____/

### ORDER GRANTING DEFENDANTS SUMMARY JUDGMENT AS TO ALL CLAIMS ASSERTED BY PLAINTIFFS MARK PALAKOVICH AND MICHAEL TELLER AND GRANTING PLAINTIFF TIMOTHY FINNERTY PARTIAL SUMMARY JUDGMENT

**THIS CAUSE** comes before the Court on Defendants' Consolidated Motion for Summary Judgment [DE #300], filed on August 23, 2011, and Plaintiffs' Motion for Partial Summary Judgment [DE #282], filed on August 18, 2011. The Court heard oral argument on the enforceability of the releases signed by Plaintiffs Mark Palakovich ("Palakovich"), Michael Teller ("Teller") and Timothy Finnerty ("Finnerty") on October 7, 2011. [DE #360].[1]

After careful consideration of the written submissions, relevant case and statutory law, and having the benefit of oral argument, the Court finds that Defendants are entitled to summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5, with respect to the claims asserted by Plaintiffs Palakovich and Teller due to Plaintiffs knowing and voluntary execution of general releases. The Court further finds that Plaintiff Finnerty is entitled to partial summary judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.5, as to the defense of Finnerty's release, raised by Defendants' Second Affirmative Defense [DE #153].

---

[1] The Court requested additional briefing on the issue of the enforceability and scope of the release agreement signed by Plaintiff Timothy Finnerty, which was submitted by Plaintiff Finnerty on October 11, 2011. [DE #372].

I. **MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE**[2]

Plaintiffs are former Stiefel Laboratories, Inc. ("SLI") employees and former participants in the SLI Employee Stock Bonus Plan ("ESBP"). The lawsuit was filed on July 6, 2009. [DE #1]. Palakovich joined this lawsuit on February 8, 2010, when the Amended Complaint was filed. [DE #47]. Teller and Finnerty joined this lawsuit on January 14, 2011, when the Second Amended Complaint ("Complaint") was filed [DE #124]. It is undisputed that all claims arose, if at all, before this litigation was commenced.

A. **Palakovich and Teller Releases**

Until its acquisition by and merger with an affiliate of GlaxoSmithKline, LLC ("GSK") in July 2009, SLI was a privately-held pharmaceutical company. (DSOF ¶ 4; C. Stiefel Decl. [DE #290] at ¶ 2). To ensure a successful integration of SLI into the GSK family of companies, certain SLI employees, including Palakovich, were offered a completion bonus if they satisfied certain conditions. (See DSOF ¶¶ 77-80; Cynthia Alisesky Decl. [DE #290] at ¶ 4; Palakovich Dep. at [DE #291], Ex. 22).

Palakovich was notified in advance that to be eligible for the completion bonus, he would, among other things, (1) need to remain an employee in good standing throughout the transition period; and (2) sign a general release of all claims in exchange for the bonus. (Id.). Palakovich was offered and accepted the completion bonus and signed the required release ("Palakovich Bonus Release") on January 29, 2010, six months after the original putative class action was filed and after Palakovich had engaged Plaintiffs' counsel to represent him. (DSOF ¶¶ 80-81; see also Palakovich Dep. [DE #291] at 17-18, 106-107 and Exs. 19, 21-22).

Palakovich's employment with SLI was severed in March 2010 in connection with a reduction-in-force. (DSOF ¶ 82; Palakovich Dep. [DE #291] at Ex. 20). Pursuant to SLI's severance

---

[2] Defendants' Statement of Material Undisputed Facts [DE #301] is cited as "DSOF." None of the cited facts are disputed by Plaintiffs [DE #323] and, as such, are well supported and admitted pursuant to Local Rule 7.5(d).

2

policy, Palakovich was offered severance pay and benefits if he signed a general release of all claims. (DSOF ¶ 83; Palakovich Dep. [DE #291] at Ex. 20; Karasick 1/18/11 Decl. [DE #290] at ¶ 15). Palakovich accepted that offer and, in exchange for executing a second general release of all claims ("Palakovich Severance Release"), Palakovich received severance pay and other benefits to which he was not otherwise entitled.[3] (DSOF ¶¶ 83-85; Palakovich Dep. [DE #291] at 17-18, 106-107, and Ex. 20).

Like Palakovich, Teller is also a former SLI employee and former participant in the ESBP. (DSOF ¶ 3; Teller Dep. [DE #291] at 16, 23, 100). After SLI was acquired by GSK, Teller was transferred to GSK. (DSOF ¶ 74; Decl. of Harry Bowers [DE #290] at ¶¶ 5-6). Teller's employment with GSK was severed in connection with a reduction in force in June 2011. (*Id.*). In exchange for payments totaling over $110,000, as well as other severance benefits, to which Teller was not otherwise entitled, Teller executed a general release of all claims ("Teller General Release"). (DSOF ¶¶ 75-76; Decl. of Harry Bowers [DE #290] ¶ 6, and Exs. 1-2). Teller was represented by Plaintiffs' counsel at the time he signed the Teller General Release. (*Id.* at Ex. 2; DSOF ¶ 76; DE #124).

Section I of the general releases signed by both Palakovich and Teller (collectively, "General Releases") provides in pertinent part:

> In consideration of the monies and other consideration to be received by me and to which I am not otherwise entitled, the adequacy of which I hereby acknowledge, and intending to be legally bound, I hereby unconditionally and forever release, waive and forever discharge [the Company, its], affiliates, parents, successors, predecessors, subsidiaries, and assigns, and all of their present or former directors, trustees, officers, employees, representatives, agents, benefit plans (together with all benefit plan administrators, fiduciaries, trustees and insurers) and attorneys (hereinafter referred to individually and collectively as the 'Company')…from any and all claims, agreements, causes of action, demands or liabilities of any nature whatsoever in law or in equity . . . arising, occurring or existing at any time prior to

---

[3] Since it is undisputed that the claims in this lawsuit all arose before January 29, 2010, the Court finds that the operative release for present purposes is Palakovich's Bonus Release. (Compl. [DE # 124] at ¶¶ 7-112, 134-170).

the signing of this General Release, whether known or unknown, with the sole exception of the claims that are set forth in subparagraph I.B below."[4]

(Gen. Releases [DE #282-13 and 14] at § I.A). The waiver contained in Section I specifically includes "any and all claims arising under . . . the Employee Retirement Income Security Act" and "federal state or local constitutions, laws, rules or regulations." (*Id.* at § I.A.2).

Section II of the General Releases also provide, in relevant part, that:

By signing this General Release, I hereby expressly acknowledge, agree and confirm the following:

1. I have been provided with adequate notice and information as required by the Older Workers' Benefit Protection Act, where applicable, and was advised by the Company to consult with an attorney of my choice prior to signing this General Release and to have such attorney explain to me the terms of this General Release, including, without limitation, the terms relating to my release of claims . . .

2. I was given at least forty-five (45) calendar days to consider the terms of this General Release and to consult with an attorney of my choosing with respect thereto...I acknowledge that I have the option to revoke such acceptance in accordance with the terms set forth below. I understand that if I sign this General Release and do not revoke my acceptance of it within the respective Revocation Period, my release of claims will be irrevocable.

3. I am receiving monies or other consideration to which I am not otherwise entitled; the value I am receiving is in full satisfaction of any and all claims, actions or causes of action for payment or other benefits of any kind that I may have against the Company; and I am releasing all of my claims against the Company knowingly and voluntarily and without duress, coercion or undue influence of any kind.

. . .

5. I agree that I will not file or cause to be filed any lawsuit against the Company asserting any of the claims that I have released in this General Release or join as a party with others who may sue the Company on any such claims or accept any relief in any lawsuit regarding such claims. If I do not abide by the terms of this paragraph, then (1) I will return to the Company all monies received in exchange for this General Release; (b) I will reimburse the Company for its costs and attorneys' fees incurred in defending any such claims; and (c) the Company will be relieved of its obligations under this General Release.

(*Id.* at § II).

---

[4] Section I.B excepts from the scope of the release "claims for workers' compensation benefits or unemployment benefits filed with applicable state agencies," challenges under the Older Workers Benefit Protection Act relating to age discrimination claims, and "claims that cannot be released, for example, claims under federal law regarding alleged entitlement to unpaid overtime." (Gen. Releases [DE #282-13 and 14] at § I.B). It is undisputed that none of these limited exceptions apply here.

4

Finally, Section IV of the General Releases provides:

> I hereby acknowledge that the monies and other consideration payable to me in accordance with this General Release on and after the date of my termination of employment with the Company are contingent upon my execution of this General Release, without which execution I will not be entitled to such amounts. I agree that this General Release embodies the entire agreement between the Company and me, that this General Release cannot be modified except by a written agreement.

(*Id.* at § IV).

There is no evidence that Palakovich or Teller revoked the General Releases or returned the consideration they received in exchange for executing the General Releases and Plaintiffs do not assert that they did.

### B. The Finnerty Release

Plaintiff Finnerty was employed by SLI from May of 1986 through August 29, 2008, when he was involuntarily terminated as part of a reduction in force. (*See* DSOF ¶¶ 1, 56; Finnerty Dep. [DE #282-18] at 21:15-20).

On September 11, 2008, Finnerty signed a general release as a condition of receiving his severance benefits (the "Finnerty Release"). [DE #282-12]. The Finnerty Release provides for certain exceptions to this General Release of Claims, which include:

> i. Employee's rights under the employment benefit plans of the Company, as applicable to the Employee on the date the Employee received this Agreement;
>
> . . .
>
> iii. Any claims that may arise after the date this agreement is signed.

(*Id.* at ¶ 4(g); *see also* Finnerty Dep. [DE #282 -18] at 22:13-22).

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the pleadings and supporting materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it may determine the outcome under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the record as a whole could not lead a

rational fact-finder to find for the non-moving party, there is no genuine issue of fact for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show specific facts to show that there is a genuine dispute. *Id.*

### III. ANALYSIS

The issue before the Court is whether the General Releases signed by Plaintiffs Palakovich, Teller, and Finnerty are enforceable to release the claims asserted by them in this case. For the reasons discussed below, the Court finds that Palakovich and Teller both knowingly and voluntarily executed General Releases of all of claims asserted by Palakovich and Teller against Defendants. The Court further finds Finnerty's claims are outside the scope of his release because Defendants' alleged breaches of fiduciary duty and securities fraud arose after September 11, 2008. Based on the record presented, there is no genuine issue as to any material fact regarding these conclusions. Accordingly, Defendants are entitled to summary judgment on all claims asserted by Plaintiffs Palakovich and Teller and Plaintiff Finnerty is entitled to partial summary judgment as to the defense of his release.

### A. Palakovich's and Teller's Claims Are All Within the Scope of Their Executed General Releases.

The Court finds that Plaintiffs Palakovich and Teller's ERISA (Counts 1-3) and federal securities law (Count 4) claims asserted against Defendants SLI and its present or former directors, trustees, officers, employees, representatives, agents, and benefit plans, are all within the scope of the General Releases they executed.

The General Releases signed by Palakovich and Teller on January 21, 2010 and June 6, 2011, respectively, contain a waiver of "any and all claims, agreements, causes of action, demands or liabilities of any nature whatsoever in law or in equity . . . arising, occurring or existing at any time prior to the signing of this General Release, whether known or unknown, with the sole exception of the claims that are set forth in subparagraph I.B below." (DSOF ¶¶ 76, 81; Gen.

6

Releases [DE #282-13 and 14] at § I.A). The waiver specifically includes "any and all claims arising under . . . the Employee Retirement Income Security Act" and "federal state or local constitutions, laws, rules or regulations." (*Id.* at § I.A.2). The General Releases executed by Palakovich and Teller also specifically cover SLI and its "present or former directors, trustees, officers, employees, representatives, agents, benefit plans (together with all benefit plan administrators, fiduciaries, trustees and insurers) and attorneys ..." (*Id.* at § I.A; *see also* DSOF ¶¶ 4-10; C. Stiefel Decl. [DE #290] at ¶¶ 2-3, 12; Decl. of Harry Bowers [DE #290] at ¶ 4).

### B. Palakovich and Teller's Executions of Their General Releases Was Knowing, Voluntary, and Created Valid, Enforceable Contracts.

The parties agree that the knowing and voluntary standard based on the totality of the circumstances applies to releases of ERISA claims.[5] *See, e.g., Myricks v. Fed. Reserve Bank*, 480 F.3d 1036 (11th Cir. 2007); *Puentes v. United Parcel Serv. Inc.*, 86 F.3d 196 (11th Cir. 1996). Courts in the Eleventh Circuit consider six factors in determining whether a release of federal statutory claims was knowing and voluntary: (1) the plaintiff's education and business experience; (2) the amount of time the plaintiff had to consider the agreement before signing it; (3) the clarity of the agreement; (4) the plaintiff's opportunity to consult with an attorney; (5) the employer's encouragement or discouragement of consultation with an attorney; and (6) the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled. *Myricks*, 480 F.3d at 1040; *Puentes*, 86 F.3d at 198. As discussed below, the Court finds that all six factors weigh in favor of enforcing the General Releases.

#### 1. *Palakovich and Teller's Education and Business Experience Allowed Them to Understand Their General Releases*

Both Palakovich and Teller had more than sufficient education and experience to understand a release agreement. Palakovich has been a business person for 17 years, most recently serving as

---

[5] A lower standard may apply to releases of federal securities claims, but it is immaterial as the Court finds that the General Releases were knowingly and voluntarily executed.

7

Global Network Analyst for SLI. (DSOF ¶ 2; Palakovich Dep. at 23). In addition, Palakovich has an Associate's Degree in information science and telecommunications, and several post-graduate, computer-related certifications. (*Id.*; Palakovich Dep. at 12). Similarly, Teller has an Associate's Degree and has been a business person for 32 years, and most recently as a Senior Project manager for GSK. (Decl. of H. Bowers [DE #290] at ¶ 5).

Additionally, both Palakovich and Teller acknowledged in their respective General Releases that (1) "I understand that if I sign this General Release and do not revoke my acceptance of it within the respective Revocation Period, my release of claims will be irrevocable"; and (2) "I am releasing all my claims against the Company knowingly and voluntarily and without duress, coercion, or undue influence of any kind." (Gen. Releases [DE #282-13 and 14] at § II.2 and II.3). For these reasons, the first factor weighs in favor of finding a knowing and voluntary waiver of claims by Palakovich and Teller.

### 2. *Palakovich and Teller had Sufficient Time To Consider The Releases*

The General Releases signed by Palakovich and Teller expressly provided that Palakovich and Teller had forty-five (45) days to consider whether to sign the General Releases. (Teller Gen. Release [DE #282-13] at 1 ("***YOU HAVE FORTY-FIVE (45) DAYS FROM RECEIPT OF THIS GENERAL RELEASE TO REVIEW AND SIGN IT***") (emphasis in the original); *see also* Gen. Releases [DE #282-13 and 14] at § II.2 ("I was given at least forty-five (45) calendar days to consider the terms of this General Release . . .").

Forty-five (45) days is more than a sufficient amount of time for Palakovich and Teller to evaluate the implications of signing (or not signing) the General Releases. *See Puentes*, 86 F.3d at 199 (citing cases finding that find fourteen days to consider release is sufficient to conclude release was knowing and voluntary). The second factor thus also weighs in favor of finding a knowing and voluntary waiver by Palakovich and Teller.

### 3. *The General Releases Are Clear And Unambiguous as to Their Effect*

The General Releases clearly state that Palakovich and Teller "unconditionally and forever release, waive and forever discharge" SLI and/or GSK, its affiliates, its current and former employees, officers, directors, and benefit plan fiduciaries "from any and all claims, agreements, causes of action, demands or liabilities of any nature whatsoever in law or in equity . . . arising, occurring or existing at any time prior to the signing of this General Release, whether known or unknown, with the sole exception of the claims that are set forth in subparagraph I.B below." (Gen. Releases [DE #282-13 and 14] at § I.A). Because there is no ambiguity in the scope of the General Releases, the Court finds that the third factor weighs in favor of finding knowing and voluntary waivers by Palakovich and Teller.

### 4. *Palakovich and Teller Had Sufficient Opportunity to Consult With an Attorney Before Executing Their General Releases*

Both Palakovich and Teller had sufficient time (at least forty-five (45) days) to consult with an attorney before they executed their General Releases. (*Id.* at § II.2). In fact, both were represented by Plaintiffs' counsel at the time they signed their General Releases. (DSOF ¶¶ 76, 81; Palakovich Dep. [DE #291] at 17-18, 106-107; Exs. 19, 21). Because Palakovich and Teller had sufficient opportunity to consult with Plaintiffs' counsel (or another attorney of their choosing) before making their decisions to sign the General Release, the fourth factor weighs in favor of finding a knowing and voluntary waiver of Palakovich's and Teller's claims in this case.

### 5. *Palakovich and Teller Were Expressly Advised to Consult with an Attorney Before Signing Their General Releases*

Both Palakovich and Teller were advised in writing to consult with an attorney prior to signing their General Releases. (Palakovich Gen. Release [DE #282-14] at § II.1; Teller Gen. Release [DE #282-13] at 1 and § II.1). Thus, the fifth factor weighs in favor of finding a knowing and voluntary release of Palakovich's and Teller's claims in this case.

### 6. *Palakovich and Teller Received Valuable Consideration in Exchange for Their Execution of the General Releases*

On August 21, 2009, Palakovich was offered a completion bonus (in an amount equivalent to eight weeks of compensation) if he satisfied certain conditions, including (1) remaining an employee in good standing throughout the transition period; and (2) signing (and not revoking) a general release of all claims in exchange for the bonus. (Palakovich Dep. [DE #291], Ex. 22). Palakovich was offered and accepted the completion bonus and signed the required release on January 29, 2010. (DSOF ¶¶ 80-81; *see also* Palakovich Dep. [DE #291], Ex. 19). Moreover, Palakovich expressly acknowledged in the General Release that he was "receiving monies or other consideration to which [he is] not otherwise entitled; the value [he is] receiving is in full satisfaction of any and all claims, actions or causes of action for payment or other benefits of any kind that [he] may have against the Company; and [he is] releasing all [his] claims against the Company knowingly and voluntarily and without duress, coercion or undue influence of any kind." (Palakovich Gen. Release [DE #282-14] at § II.3). Since Palakovich received monetary payments to which he was not otherwise entitled in exchange for executing and not revoking the General Release, the Court finds that the sixth factor weighs in favor of finding a knowing and voluntary release.

As an at-will employee of GSK, Teller was not entitled to severance pay upon the termination of his employment. (DSOF ¶ 74; *see also* Decl. of Harry Bowers [DE #290] at ¶ 7 and Ex. 1, Teller's Severance Pay and Medical/Dental Benefit Election Form, § I). Nevertheless, Teller was offered $110,945 and other severance benefits in exchange for executing and not revoking his General Release. (*See id.; see also* DSOF ¶ 75). Moreover, Teller expressly acknowledged in the General Release that he was "receiving monies or other consideration to which [he is] not otherwise entitled; the value [he is] receiving is in full satisfaction of any and all claims, actions or causes of action for payment or other benefits of any kind that [he] may have against the Company; and [he

10

is] releasing all [his] claims against the Company knowingly and voluntarily and without duress, coercion or undue influence of any kind." (Teller Gen. Release [DE #282-13] at § II.3). Since Teller received money and other benefits to which he was not otherwise entitled in exchange for executing and not revoking the General Release, the sixth factor weighs in favor of finding a knowing and voluntary release.

In sum, because each factor considered by courts when determining whether a release was knowing and voluntary is satisfied in this case, the Court finds that there is no genuine issue of material fact as to the question of whether Palakovich and Teller each knowingly and voluntarily executed their respective General Release and thereby released all of their claims in this case.

### C. Palakovich and Teller's General Releases are not Affected by ERISA's Exculpation or Anti-Alienation Clauses.

Plaintiffs argue that the release agreements should not be enforced pursuant to ERISA's exculpation clause. 29 U.S.C. § 1110. None of the releases, however, purport to apply to future claims under ERISA and Defendants have not argued that they do. Thus, this argument is not relevant to any release in this case.

Plaintiffs also argue that the release agreements should not be enforced pursuant to ERISA's anti-alienation clause. 29 U.S.C. § 1056(d)(1). The Court finds that Plaintiffs' argument is precluded by the Supreme Court's decision in *Kennedy v. Plan Admin. for DuPont Savings & Invest. Plan*, 129 S. Ct. 865, 873 (2009).[6] In *Kennedy*, the Supreme Court held that ERISA's anti-alienation provision does not apply to the waiver or release of rights to vested benefits under an ERISA-governed plan; rather, it prevents the transfer or assignment to a third party of an

---

[6] *See also, e.g., IBEW Local 613 Defined Contribution Pension Fund v. Moore*, No. 1:04-cv-3738-TWT, 2005 U.S. Dist. LEXIS 42034, *13 (N.D. Ga. Oct. 14, 2005) (granting summary judgment against party that had waived ERISA claims and holding that "the anti-alienation clause does not address the validity of waivers"); *Rhoades v. Casey*, 196 F.3d 592, 598-99 (5th Cir. 1999) (ERISA's anti-alienation provision does not bar knowing and voluntary release of vested pension benefits); *Finz v. Schlesinger*, 957 F.2d 78, 81 (2d Cir. 1992) (claims for vested pension benefits may be waived by knowingly and voluntarily signing release agreement); *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 181 (1st Cir. 1995) (employee may waive right to participate in employee welfare benefit plan).

enforceable right against the ERISA plan for the payment of benefits to that third party. *Id.* at 873.

### D. Releases of ERISA Claims Do Not Need To Be Separately Negotiated or Supported by Separate Consideration.

Plaintiffs further argue that ERISA releases must be separately negotiated or supported by separate consideration and cannot be included in a general release of all claims. A number of courts have rejected Plaintiffs' arguments and have held that (1) a general release of all claims generally includes all ERISA claims, even if ERISA is not specifically mentioned; and (2) a release of ERISA claims which is included as part of a general release need not be separately bargained for or supported by separate consideration. *See, e.g., Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 370-73 (5th Cir. 2002) (a general release bars claim for ERISA benefits, even if ERISA is not specifically mentioned); *Smart v. Gillette Co. Long-Term Dis. Plan*, 887 F. Supp. 383, 386 (D. Mass. 1995) ("a general release of claims . . . bars an ERISA action even when ERISA is not specifically mentioned in the release"), *aff'd*, 70 F.3d 173 (1st Cir. 1995); *Sussman v. Rabobank Int'l*, 739 F. Supp. 2d 624, 628-29 (S.D.N.Y. 2010) (general release in exchange for lump sum severance payment covers claim for ERISA benefits); *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011) (severance agreement and release barred plaintiff's claim that his pension account would have been worth more but for the defendants' breach of ERISA fiduciary duties). This Court agrees and finds as a matter of law that Plaintiffs' argument does not avoid the effect of the General Releases.

### E. Palakovich and Teller Ratified the Releases When They Failed to Tender Back the Consideration.

The General Releases signed by Palakovich and Teller both include the following provision:

> I agree that I will not file or cause to be filed any lawsuit against the Company asserting any of the claims that I have released in this General Release or join as a party with others who may sue the Company on any such claims or accept any relief in any lawsuit regarding such claims. If I do not abide by the terms of this paragraph, then (1) I will return to the Company all monies received in exchange for this

12

General Release; (b) I will reimburse the Company for its costs and attorneys' fees incurred in defending any such claims; and (c) the Company will be relieved of its obligations under this General Release.

(Gen. Releases [DE #282-13 and 14] at 3, ¶ 5)). Thus, the plain language of each contract requires Palakovich and Teller to return their cash payments and other consideration if they attempt to challenge or rescind the releases. It is undisputed that they have not done so and, therefore, the Court finds that they cannot maintain this action against Defendants, who were all covered by the General Releases.

Moreover, even if the contracts did not expressly require the return of consideration, general contract law provides that Plaintiffs' failure to return all monies paid to them for the releases prevents them from attempting to invalidate the release agreements. As a result, the releases remain enforceable notwithstanding Plaintiffs' arguments, including Plaintiff Palakovich's allegations of fraudulent inducement. *See, e.g., Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1278 (11th Cir. 2004) (requiring plaintiffs to disgorge settlement funds to avoid release and pursue federal statutory (§ 1981) claims); *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 376 (5th Cir. 2002) (holding that federal common law of contracts, which includes defenses of ratification and tender back, applied to release of ERISA claims); *Deren v. Digital Equip. Co.*, 61 F.3d 1 (1st Cir. 1995) (applying federal common law of ratification to release of ERISA claims); *Halvorson v. Boy Scouts of Am.*, No. 99-5021, 2000 U.S. App. LEXIS 9648, *6 (6th Cir. May 3, 2000) (general release, which was ratified by retaining undivided severance, foreclosed claims under ADA, FMLA, and ERISA).

### F. Finnerty's Claims Are Outside the Scope of his September 11, 2008 Release.

Finnerty signed a severance agreement and general release of all claims on September 11, 2008. (*See* Finnerty Gen. Release [DE #282-12], at 11). By its terms, the Finnerty Release does not apply to any claims arising after the date the agreement is signed. (*See id.* at ¶ 4(g)(iii)). At oral argument, Defendants' counsel conceded this point. [DE #372, at 2].

### 1. *Finnerty's ERISA Claims Accrued After September 11, 2008*

The law is clear that general releases cannot bar breach of fiduciary duty claims that arise after the effective date of the release. *Srein v. Soft Drink Workers Union, Local 812*, 93 F.3d 1088, 1096 (2d Cir. 1996). A cause of action under ERISA does not arise until the date of the last action which constituted part of the breach of violation or, in the case of an omission, the latest date on which the fiduciary could have cured the breach of violation, or earliest date on which the plaintiff had actual knowledge of the breach or violation. 29 U.S.C. § 113(1) and (2).

Finnerty's claims for breach of ERISA fiduciary duties accrued after the date he executed the general release. Specifically, Finnerty's claims are based on representations and omissions, including, *inter alia*, Defendant's Defendants' alleged failure to disclose the sale of SLI in November 2008 and alleged bad faith sale price offer of $16,469 per share to Finnerty in November 2008 through January 2009, and paid in February 2009. (Compl. [DE #124], at ¶¶ 68-112). Therefore, by the terms of the Finnerty Release and under applicable law, Plaintiff Finnerty's ERISA claims (Counts 1 and 2) are not barred by the Finnerty Release.

### 2. *Finnerty's Securities Fraud Claims Arose After September 11, 2008*

Finnerty has similarly not asserted any securities fraud claim (Count 4) against Defendants based on conduct that predated his September 11, 2008 release. As alleged, Finnerty's securities fraud claim against Defendants arose no earlier than November 2008. (*See, e.g.*, Compl. [DE #124], at ¶¶ 68-77, 102, 115).

A cause of action for securities fraud arises when the fraud is discovered or should have been discovered in the exercise of due diligence. 28 U.S.C. § 1658. The last action which Finnerty alleges constituted securities fraud here occurred when SLI bought Finnerty's stock on February 13, 2009. (Compl. [DE #124], at ¶ 83). Moreover, as alleged, the earliest date on which Finnerty had actual knowledge of the alleged breach is when the sale to GSK was announced on April 20, 2009.

(*Id.* at ¶ 77). Both of these events giving rise to Finnerty's 10b-5 claim post-date the Finnerty release. Therefore, by its terms, the Finnerty Release is not a defense to his securities fraud claims.

## IV. CONCLUSION

The record in this case and applicable law demonstrate that no genuine issue exists as to any material fact relating to releases signed by Plaintiffs Palakovich, Teller, and Finnerty. Defendants are thus entitled to judgment as a matter of law as to all claims asserted by Palakovich and Teller and Finnerty is entitled to judgment as a matter of law as to the defense of his release.

Accordingly, after careful consideration and the Court being otherwise fully advised, it is **ORDERED, ADJUDGED, and DECREED** that:

1. Defendants' Consolidated Motion for Summary Judgment [DE #300] be, and the same is, hereby **GRANTED** with respect to Plaintiffs Mark Palakovich and Michael Teller;

2. Plaintiffs' Motion for Partial Summary Judgment [DE #282] be, and the same is, hereby **GRANTED** as to the defense of the release signed by Plaintiff Timothy Finnerty; and

3. Plaintiffs' Motion for Partial Summary Judgment as to the releases signed by Plaintiffs Palakovich and Teller and the Count 3 prohibited transaction claims is **DENIED**.

**DONE AND ORDERED** in Chambers at the James Lawrence King Federal Justice Building and United States Courthouse in Miami, Florida, this 17th day of October, 2011.

_____
JAMES LAWRENCE KING
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record