```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2                         MIAMI DIVISION
 3                      CASE 09-21871-CIV-JLK
 4
    JAMES A. BACON,
 5  et al,
 6                        Plaintiffs,
 7        vs.                              MIAMI, FLORIDA
                                           APRIL 9, 2012
 8  STIEFEL LABORATORIES, INC.,
    et al,
 9
                          Defendants.
10
11           TRANSCRIPT FINAL PRETRIAL CONFERENCE
             BEFORE THE HONORABLE JAMES LAWRENCE KING
12             SENIOR UNITED STATES DISTRICT JUDGE
    _____
13
    APPEARANCES:
14
    FOR THE PLAINTIFF:
15                          NORMAN S. SEGALL, ESQ.
                            Segall Gordich, P.A.
16                          801 Brickell Avenue, Ste. 900
                            Miami, FL  33131 - 305/755-4930
17                          Email:  nss@segallgordich.com
18                          PETER PRIETO, ESQ.
                            MATTHEW WEINSHALL, ESQ.
19                          Podhurst Orseck, P.A.
                            25 W. Flagler Street, Ste. 800
20                          Miami, FL  33130 - 305/358-2800
                            Email:  pprieto@podhurst.com
21                                  mweinshall@podhurst.com
22  FOR THE DEFENDANT:
                            DAVID A. COULSON, ESQ.
23                          Greenberg Traurig
                            333 N.E. 2nd Avenue
24                          Miami, FL  33131 - 305/579-0500
                            Email:  coulsond@gtlaw.com
25
```

```
 1  APPEARANCES CONT'D:
 2  FOR THE DEFENDANT:
                            HILARIE BASS, ESQ.
 3                          Greenberg Traurig
                            1221 Brickell Avenue
 4                          Miami, FL  33131 - 305/579-0745
                            Email:  bassh@gtlaw.com
 5
                            TODD D. WOZNIAK, ESQ.
 6                          Greenberg Traurig
                            3290 Northside Parkway
 7                          The Forum Suite 400
                            Atlanta, GA  30327 - 678/533-2100
 8                          Email:  wozniakt@gtlaw.com
 9  REPORTED BY:
                            LARRY HERR, RPR-CM-FCRR-AE
10                          Official Federal Court Reporter
                            United States District Court
11                          Wilkie D. Ferguson Federal Courthouse
                            400 No. Miami Avenue, Ste. 8N09
12                          Miami, FL  33132 - 305/523-5290
                            Email:  larry_herr@flsd.uscourts.gov
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1          THE COURT:  We are here this morning on the final

2    pretrial conference in the matter of Tim Finnerty vs. Stiefel

3    Laboratories and others.  And I believe you've already given my

4    Courtroom Deputy -- we have Mr. Segall and Mr. Prieto here for

5    the plaintiff this morning.  You have with you?

6          MR. PRIETO:  Matt Weinshall.

7          THE COURT:  Good morning.  We have Mr. Coulson,

8    Ms. Bass, and Mr. Wozniak.

9          I reviewed, again this morning, your joint pretrial

10   stipulation and the documents appended to it.  I note that the

11   item that I usually take up first at the final pretrial

12   conference is the matter of any pending motions.  The only one

13   that you've indicated on your pretrial stipulation is a matter

14   that while you may have resolved it, you may not have, is the

15   defendant's motion in limine with a series of items, some nine

16   items that they believe should be discussed this morning.

17         Let me inquire of counsel, where are we on that?  Have

18   you all been able to -- you indicated you were going to try to

19   resolve those issues.  Have they been resolved or part of them?

20         MR. COULSON:  Good morning, your Honor, David Coulson.

21         We resolved all but one aspect of one item from that

22   omnibus motion in limine.  The parties have prepared a joint

23   pretrial stipulation.  We'll probably be signing it today and

24   then submitting it to the Court.

25         The aspect that we have not resolved involves Section

4

1   3 of the omnibus motion in limine.  Defendants move to exclude

2   any evidence of other lawsuits, investigations, and so forth.

3   The plaintiffs and defendants have agreed that evidence of the

4   other private, individual actions will not come in.

5        However, the plaintiffs take the position that the

6   December 2011 civil complaint filed by the Securities and

7   Exchange Commission, which is before Judge Zloch, should be

8   allowed to come into evidence.

9        The defendants have actually briefed this issue

10  earlier this year, your Honor.  You may recall the plaintiffs

11  filed a motion in limine seeking to exclude certain evidence.

12  In the alternative, the plaintiffs argue that they should be

13  able to use the SEC complaint.  Your Honor denied that motion

14  in all aspects.  Although your order did not specifically

15  address the alternative relief asked by the plaintiffs, but

16  there was a denial of the motion.

17       Your Honor, the SEC complaint should not come into

18  evidence.  It is -- the allegation about Mr. Bogush appears in

19  paragraph 18 of the SEC complaint, or the SEC merely makes an

20  allegation.  A one-sentence conclusory allegation that reads as

21  follows:  "However, this third party accountant used a fraud

22  methodology and was not qualified to perform valuations."

23  That's all the SEC alleges.  The SEC is the plaintiff in that

24  civil action.  As such, the allegations of the complaint are

25  inadmissible hearsay.

1           Number two, the evidence is irrelevant.  The fact that

2    this allegation was made by the SEC in the year 2011 is

3    completely irrelevant to Charlie Stiefel's state of mind about

4    hearing from Bogush, whether he was qualified to be an

5    appraiser and whether his methodology was reasonable in the

6    year 2008 and before.

7           And then thirdly, as we've outlined in our papers that

8    we filed earlier in the spring in response to the motion in

9    limine, under Rule 403, the danger of confusion and misleading

10   the jury and unfair prejudice outweighs any probative value.

11   Here, we have zero probative value.  It is a completely

12   irrelevant document, and it is inadmissible hearsay.  We cited

13   case authority to that effect.

14          That's the argument, in a nutshell, for why the SEC

15   complaint should not be referenced in this trial or come into

16   evidence or even be mentioned by witnesses or in opening

17   statement.

18          THE COURT:  All right, thank you.

19          Mr. Prieto?

20          MR. PRIETO:  Good morning, your Honor, Peter Prieto.

21          Your Honor, Mr. Coulson is partially correct that this

22   came up already before your Honor.  In our motion in limine to

23   preclude the audits by the Department of Labor and the IRS,

24   your Honor said those audits are coming in.  That was -- their

25   motion was 460 -- I'm sorry, our motion was docket entry 460.

1    Their response was 464.

2            What we argued in our motion was that if your Honor

3    concluded that the audits of the Department of Labor and the

4    IRS were admitted, then we had reserved the right, in rebuttal

5    in response to that, to bring in evidence of the SEC's

6    enforcement proceeding.

7            Your Honor concluded in an order denying our motion to

8    preclude the audits from coming in, but your Honor said as

9    follows:  Quote, "Plaintiff may, of course, may raise any

10   contradictory testimony and/or documents related to the audits

11   during presentation of its evidence," end quote.

12           That was the order that your Honor entered, docket

13   entry 466.

14           THE COURT:  You are saying that the order said what

15   about the admissibility of the audits, yes or no?

16           MR. PRIETO:  Your Honor said that yes, the audits of

17   the Department of Labor and the IRS were admissible.

18           THE COURT:  Can come in.

19           MR. PRIETO:  Can come in.

20           THE COURT:  So you wished, on rebuttal, if the

21   defendant uses the audits to question the people on

22   cross-examination that are testifying about their conclusion or

23   whether or not they were part of the deciding group on what

24   would be put in the SEC complaint about an opinion about

25   Mr. Bogush.  I am trying to see how this would come up.

1          Obviously, if the audits that are going to come in

2    were performed by -- who did that, Mr. Bogush?

3          MR. PRIETO:  There's three audits, your Honor.  There

4    was an audit from the Department of Labor, an audit from the

5    IRS, and a private audit from a Bernard Becker.

6          THE COURT:  So the audits come in.  Somebody is

7    sitting there testifying, a witness, about the audits and you

8    wish to be able to cross, I presume, and say well, Mr. Labor

9    Auditor, Mr. Jones let's call him, when you made up that audit,

10   did you form an opinion about Mr. Bogush?  How are we going to

11   get at this SEC complaint statement?

12         Normally, it would not be admissible because anybody

13   can put anything in a complaint.  You can put the most

14   outrageous, and do, things in complaints you've ever seen in

15   your life.  We get off into divorce cases.  So anybody can put

16   anything in a complaint.  Presumably, they do it in good faith.

17   Presumably, if not, it is stricken and all that.

18         Rather than going down that trail of okay, we've got

19   the complaint here, the SEC alleged it, and now what happened

20   to it?  Did Judge Zloch or somebody strike it or not?  That's a

21   whole different thing.  Standing alone, that wouldn't be

22   admissible, I don't think.  Now then, the question is whether

23   or not you can probe it if the defendants bring it up in some

24   fashion.

25         Now, how do you suggest that it would be brought up in

1    some fashion?   Clearly, if something is brought up that deals

2    with Mr. Bogush's qualifications, and if that is brought out,

3    if they are getting into that in the defense, then you are

4    entitled to cross.   That's why these motions in limine, you

5    know, you might as well decide the case.

6            How would that come up?

7            MR. PRIETO:   Your Honor, we don't expect to use the

8    findings in our case in chief.   We would only use it for

9    cross-examination.   The way it would come up, as I understand

10   it, is if Charles Stiefel, one of the defendants, is going to

11   testify that the Department of Labor and the IRS conducted

12   audits and said that there was nothing wrong with the Bogush

13   valuations, his methodology, or his qualifications.

14           You can see that if you look at docket entry 433.

15   This is what the defendant said in their motion for summary

16   judgment, which your Honor denied.   Quote, "Charlie also had

17   other indications of the reasonableness of Bogush's valuations,

18   including when the Department of Labor and the Internal Revenue

19   Service audited the ESBP.   No issues were raised by either

20   governmental agency about Bogush's qualifications, valuations,

21   or valuation methods," end quote.

22           The only way that it's going to come up is they are

23   going to have Mr. Stiefel testify that the IRS and the

24   Department of Labor came in there and found nothing wrong with

25   the ESBP.   That's going to raise the inference that two

1   governmental agencies looked at this program and found nothing

2   wrong.  We're entitled to use the enforcement proceeding by the

3   SEC to cross-examine Mr. Stiefel on that point.

4           The SEC's complaint is a little different than a civil

5   complaint.  They conduct an investigation.  They deposed

6   Mr. Stiefel and his two sons before they brought this

7   enforcement proceeding.  They reviewed records, they deposed

8   all of them, and then they made findings in their complaint.

9   That complaint, we would submit, your Honor, is admissible

10  hearsay under 803(c).

11          THE COURT:  They made the finding that Bogush was

12  fraud in his analysis.

13          MR. PRIETO:  Correct.

14          THE COURT:  And they put that in a complaint.  Well,

15  could you not call the lawyer that drafted the complaint and

16  ask him the basis for that?  You see, you have Mr. Stiefel.

17  You contend, you suspect, you believe he will be saying these

18  things.  Okay.  The Labor Department came in and checked it all

19  out and everything was fine.

20          The way to meet that on rebuttal, without getting into

21  documents, just simply call the man who signed the complaint

22  and ask him whether or not, after these audits had been done,

23  the SEC filed a complaint saying that there were problems with

24  it.

25          MR. PRIETO:  That is one way to do it, your Honor.  I

1    think the more preferable way, since it is going to come up in

2    their case when they call Mr. Stiefel, is through

3    cross-examination of Mr. Stiefel when he says, "I heard from

4    the Department of Labor.  I heard from the IRS, and none of

5    them said there was anything wrong with the ESBP plan."  I

6    think, at that first juncture, we would be entitled, using the

7    SEC --

8           THE COURT:  You are suggesting a different way that it

9    might come up on cross, which would be, "Well, Mr. Stiefel, do

10   you have any indication from the governmental agencies that

11   investigated this that there was a problem with Mr. Bogush?"

12   If he says no, then it is Katy bar the door.  You can bring

13   whatever you want, I would think.

14          I want to hear from Mr. Coulson.  This would be a

15   general thought.  If he says yes, we were sued where they

16   raised a question about Mr. Bogush's qualifications, then that

17   would end it.  It is, sort of, like asking have you been

18   convicted of murder or not or driving or something else.

19          It all depends on how this matter comes up.  You all

20   are quoting what I said in that other hearing.  I'm sure,

21   without remembering what I said there, but I accept what you

22   say.  I probably had the same sort of analysis with you that

23   I'm having now as to how it is going to come up.

24          That's why these motions in limine are, kind of,

25   ridiculous, because we don't know whether Mr. Stiefel is going

1   to make some sort of bold statement to the effect that he was

2   investigated by the world and nobody said anything was wrong.

3   They may or may not say that.  They may be careful and keep him

4   out of that area.

5         If he does say it, you want the ability to be able to

6   question him about his information.  First of all, it is a

7   conclusion that he says.  It's an opinion about his knowledge

8   of the audits and what they say.  But I suppose that is

9   probably, if the defense is going to use him for that, it is

10  probably the simplest way to get that point out.  Mr. Stiefel,

11  have you examined all the audits?  Yeah.  Were there any

12  problems with them?  No.

13        If that's their point, it's simple, but it is still an

14  opinion as what's in the audits.  Of course, you could

15  cross-examine about his knowledge of the audits, and it might

16  be thorough, it might be superficial, it might be believable,

17  it might not be.

18        The question is whether or not he had any other

19  knowledge that would indicate that it was not that the audits

20  raised some question in his mind, which he then should have

21  been aware of when he wrote his e-mail to the people telling

22  them the evaluation was 16,000, et cetera.  That seems to be

23  where you are headed with this.

24        Let me find out from Mr. Coulson whether or not you

25  intend to get into this.  Obviously, this is going to be a

12

1   problem.  It may be that you don't intend to do that at all.

2   As I say, that's the trouble with motions in limine.  We don't

3   know what's going to happen.  All right, let me hear.

4            MR. COULSON:  This is one of those motions in limine,

5   your Honor, where we do know.  Let's go through the chronology.

6   Mr. Finnerty made his investment decision to sell his Stiefel

7   stock.

8            THE COURT:  Excuse me, what is Mr. Stiefel going to

9   say that will provoke this?

10           MR. COULSON:  Mr. Stiefel will testify that when he

11  acted as the trustee for the ESBP, in the past years before

12  January 6th, 2009, that he had many indications that Mr. Bogush

13  was qualified and that his valuations were reasonable.

14           THE COURT:  Right.  Now, when he says that, why should

15  the plaintiff, on cross, not be able to ask, "Did you have any

16  indications that they were not all right?"

17           MR. COULSON:  The plaintiffs can ask that question,

18  provided that the evidence existed in the past at the relevant

19  time.

20           THE COURT:  No, no, it's what he says.  It is his

21  cross-examination.  He may be lying when he says there was

22  nothing in the past.  You want to prove that everything was

23  okay through him.  His opinion of the past, no.  It is his

24  statement, under oath, did you review the audits, and you've

25  told me there were ten of them, and you go through ten or 12 or

1    15 or whatever you do.  He says, "Yeah, they were okay, they

2    were okay, they were fine."

3         But on cross, the other side is able to bring out

4    anything that they may have that shows that he knew, when he

5    made the statement that they were all fine, that he misstated

6    or lied or is not believable.

7         One way is to say, in effect, "Didn't the SEC sue you

8    and tell you that there was a problem, and from that suit, did

9    you read it?"  Maybe he never did, and he says no.  Then fine,

10   they prove it differently.  Or he says, "Yes, I read it."

11        In the same context of giving his opinion about ten

12   other audits, they say, "Well, didn't that alert you that there

13   was a problem?"  If he says it did, that's the end of that.  If

14   he says it didn't, then they go into it.

15        MR. COULSON:  Your Honor, you just put your finger on

16   it.  The issue is, was Mr. Stiefel alerted to a problem with

17   Mr. Bogush.

18        THE COURT:  By this complaint.

19        MR. COULSON:  The complaint was just filed in December

20   of 2011.  If we had gone to trial in November, Mr. Stiefel

21   would not have known about the SEC's complaint.

22        THE COURT:  The question is did he have it when he was

23   testifying about all these good audits.  Did he have any

24   indication that there was a government agency out there that

25   said there may be a problem with Mr. Bogush.  If you're putting

1   him on to say there was nothing there, there was nothing there,

2   it doesn't matter when they were sued.

3        The question is did he know, at the time he was

4   testifying about those ten good audits, that there was some

5   audit out there, or some investigation ongoing, whether he knew

6   about it or not.  Did he know that there was one, and he says

7   no, and they ask him about the complaint, and he says that

8   wasn't filed until later, and I didn't know that then; is that

9   your testimony -- the way the testimony will come up?

10        MR. COULSON:  Yes.

11        THE COURT:  We can get him in here and spend a day

12   listening to him.  Then I can rule very simply.  Right now,

13   both of you are asking me to imagine the testimony.  I'm trying

14   to do it in this fashion, but it's a ridiculous way to do it.

15   We ought to just bring him in here and see what he says.  If he

16   is going to try to create the impression -- is this the ERISA

17   claim or the securities claim that he would be testifying on?

18        MR. COULSON:  This testimony will come in on both of

19   them, your Honor.

20        THE COURT:  All right.  So he's testifying.  If you

21   are trying to create the impression with the jury that he had

22   ten audits and everything looked fine, that's all right, that's

23   part of your case.  Then they are entitled to rebut it, if they

24   can.  Rebutting it to show there is a big red flag out there.

25   Were you aware -- you are saying that the first knowledge he

1  had that the SEC was interested in this was when he got sued?

2      MR. COULSON:  Well, the SEC investigation began in

3  July 2009.  It was right around the closing of the merger when

4  GSK purchased Stiefel Laboratories.  It was within a few weeks

5  of the Finnerty lawsuit being filed.  The Finnerty lawsuit was

6  filed on July 6th, 2009.  The SEC investigation started within

7  two or three weeks of that time.

8      THE COURT:  The SEC investigation did not start, under

9  your information, or the best you have, until after

10 Mr. Finnerty filed his lawsuit; is that correct?

11     MR. COULSON:  Yes.

12     THE COURT:  Thank you.

13     Mr. Prieto, if the SEC investigation did not start

14 until after Mr. Finnerty's lawsuit, then, obviously, any

15 information in the hands of the SEC at that point, any

16 investigation they had done of Mr. Stiefel and Stiefel

17 Laboratories, did not occur and could not have been known to

18 Mr. Stiefel at that time.

19     So, therefore, he would be telling a truthful

20 statement if he said, at that point, that he had these ten

21 goods ones and he didn't know about a bad one from the SEC.

22     MR. PRIETO:  Yes, your Honor, but he is creating the

23 inference that two governmental agencies said audits are fine.

24 As your Honor noted, it is unfair to create that inference when

25 a third governmental agency has taken his testimony, has taken

1   -- reviewed documents and said no, you're wrong.

2          THE COURT:  But they didn't do the interview until

3   later.

4          MR. PRIETO:  That's correct.

5          THE COURT:  Well, he is talking about his state of

6   mind at the time.  That's the only way he can get it into

7   evidence.  If he's just sitting there rambling about audits, he

8   can't do that, no.

9          Second thing is that he's talking about his state of

10  mind up to July 9th, 2009.  At that point, did he know that the

11  SEC was doing an investigation that culminated in a decision

12  that Bogush was a problem?  He didn't know at that time.  He

13  couldn't know at that time.  You can ask him, I suppose.

14  Certainly, it would be proper cross-examination.

15          Was anything out there that came to your attention

16  about an investigation, by any governmental agency, that came

17  to your attention that you knew about that indicated there was

18  a problem with Mr. Bogush, and he'll say no.  That's a truthful

19  statement.

20          MR. PRIETO:  It is important for your Honor to know

21  the timeline.  The agreement to sell to Glaxo was April 20th of

22  2009.  The actually closing of the transaction did not come up

23  till August --

24          THE COURT:  I know, I'm aware.

25          MR. PRIETO:  Before the transaction closed, it is my

 1   understanding, from Mr. Coulson's proffer, your Honor, that

 2   Mr. Stiefel was aware, before the transaction closed, that

 3   there was an SEC investigation.

 4          THE COURT:  I thought he said he was not aware until

 5   Mr. Finnerty filed his lawsuit.

 6          MR. PRIETO:  That is correct, but --

 7          THE COURT:  When was the lawsuit in relation to these

 8   other dates?

 9          MR. PRIETO:  July 6th of 2009.

10          THE COURT:  Let's go through the sequence of events.

11   We have the closing.  Do you have evidence that he knew, before

12   the closing of the sale, about the SEC investigation?  He knew

13   because, presumably, the SEC had been out asking him questions,

14   talking to his employees, finding out.  Did the SEC do that, or

15   did the SEC start all of that after Mr. Finnerty's lawsuit,

16   which was in August, I think?

17          MR. PRIETO:  No, Mr. Finnerty's lawsuit was July 6th

18   of 2009.  It's my understanding that the deal closed, and

19   Mr. Coulson would know the details about the SEC.  Mr. Finnerty

20   filed his lawsuit on July 6th of '09.  The Glaxo deal closed in

21   late July or August.

22          THE COURT:  Let's get at when Stiefel knew all of

23   this.  The only way he would have known would have been if

24   people were out there from the SEC rooting around in his

25   records and doing all that.  Mr. Coulson says that none of that

 1   occurred until after Mr. Finnerty filed his lawsuit.

 2          After Mr. Finnerty filed his lawsuit, up to that point

 3   in time, Stiefel didn't know.  I mean, I'm sorry.  He didn't

 4   know about the SEC.  He knew about all the rest of it and all

 5   that.  It's a question of when he learned that the SEC had some

 6   audit that threw in doubt Mr. Bogush's independents.  Clearly,

 7   he would know about that when the lawsuit was filed.

 8          He might know about it, or would know about it

 9   presumably, at the time the investigation was going on.  But if

10   the investigation wasn't going on until after Mr. Finnerty

11   filed his lawsuit, then how can it be used by Mr. Finnerty to

12   contest the point that he is trying to make that the audits did

13   not indicate there was a problem?

14          MR. PRIETO:  Your Honor, I completely understand your

15   point.  I do think that, as matter of completeness and

16   fairness, if he is going to testify as they said he is going to

17   testify, that the Department of Labor came in and the IRS came

18   in, in 1994, your Honor.  The transaction at issue here

19   occurred in 2008 and 2009.  If they're permitted to elicit from

20   Mr. Stiefel that the IRS and the Department of Labor --

21          THE COURT:  I don't know that they will be.  I don't

22   know where we're going with this.  I assumed he was taking it

23   all in the timeframe of everything else.  You are going to be

24   objecting, and you are going to be arguing it, and I will rule

25   on it.  I don't know that you can go back.  I don't know that

19

1   that's relevant or not as to what he knew at the time that he

2   sent his e-mail out with the value that the independent auditor

3   was putting on the stock.

4           MR. PRIETO:  If Mr. Stiefel does not testify

5   concerning the audits, we don't have any intention of

6   introducing the SEC's enforcement proceedings.

7           THE COURT:  I understand that.

8           Mr. Coulson, what's the deal here?  Do you believe

9   there's some relevancy to something that happened in '94 and

10  '95?

11          MR. COULSON:  Absolutely, your Honor.  Mr. Bogush has

12  been conducting the appraisals for the ESBP for over 30 years.

13  Charlie Stiefel was on the ESBP committee for almost all that

14  time.

15          THE COURT:  I understand that, and he can testify to

16  that.  The question is whether or not he can testify as to what

17  Mr. Bogush was giving him in reports.  The only basis for that

18  would be state of mind or knowledge when he sent these e-mails

19  out in 2009.  So, saying that he relied on Bogush for 30 years

20  is well and good.  It is a little bit like saying the guy that

21  robbed the bank in 2009 had a good record up until then.  I

22  don't know what it's going to get you.  I don't know what that

23  lends to his credibility.  It is part of the background of this

24  thing, and I suppose you have got to bring it out, whatever it

25  may be.

 1          The question is his state of mind, what he can be

 2    cross-examined on.  The way to resolve this is to put the trial

 3    on, listen to the man, and I will rule on it.  It will be

 4    based, the ruling, based quite simply on what he has said.  If

 5    he has said that Bogush was a wonderful man because he was

 6    investigated by everything in the world, if that's somehow

 7    permissible, and I doubt that it is.

 8          He can say he got audits all through this time, none

 9    of which alerted him to the fact that his stock was worth more

10    than $16,000 a share, fine.  Then they can ask him was there

11    anything during that timeframe, before you took the position

12    and sent it out to your people, that the put value was $16,000

13    a share, did you have knowledge that it was not?  I guess he

14    will say no.

15          At that point, if they've got something in that

16    timeframe, but not a statement made in a complaint.  That is

17    pure hearsay.  That's my trouble with the thing.  There must be

18    a different way to bring it out.  I'm sure the lawyers can

19    think of a cross-examining question that's proper, or a direct

20    question that's proper, to bring out both of these points.  I

21    don't have any doubt that all you can figure that out.

22          I don't know.  I can't estimate every possible way

23    it's going to come up.  I can say that what a lawyer says, in

24    an SEC complaint about Mr. Bogush, in and of itself, is not

25    competent evidence as just tossing the complaint into -- that I

1  do not see, at this point, as being competent evidence.  It is

2  no more than the lawyer's opinion.  You want to bring him and

3  cross-examine him and that sort of thing, possibly.  I don't

4  know.  We all know the rules of evidence.

5          At this point in time, on this issue, we will simply

6  take it up when the trial goes on.

7          Let's move on now to the issue -- and the present

8  status of the pleadings, as I've reviewed them this morning

9  from reading the docket sheet, your pretrial stipulation and

10  your motions.  The status of the case is the case will start on

11  May 10th, during that two-week period.  I have three other

12  cases, but during that two-week period it will start in the

13  two-week period of May 10th.

14          Right now, we are scheduled for the jury aspect, which

15  you all estimate to be a ten-day trial, to start first on a

16  bifurcated basis.  The bench trial on the ERISA claims, which

17  you estimated to be two to three days, would follow shortly

18  after that or as soon as you can say get ready after the jury

19  trial.  Is that your understanding of where we stand

20  procedurally, Mr. Prieto?

21          MR. PRIETO:  Yes, your Honor, it is.  The SEC case

22  will proceed first.

23          I only have one clarification.  Your Honor said during

24  the week of May 10th.  I believe that week starts on May 7th.

25  May 7th is a Monday.  I just wanted clarification from the

1    Court.

2         THE COURT:  Let's find out.  Joyce, do you have a

3    calender before you?

4         DEPUTY CLERK:  It starts May 7th.

5         THE COURT:  You are absolutely correct.  I had written

6    that in my own handwriting on the top, May 7th.  May 7th, you

7    are absolutely correct.  It's a two-week calender, and right

8    now I have three criminal cases and a couple of civil,

9    including this one.  I anticipate, by the time we get there,

10   that probably yours is the only case left.

11        So May 7th, that's your understanding.  Mr. Coulson,

12   is that your understanding of where we are procedurally?

13        MR. COULSON:  Yes, your Honor.

14        THE COURT:  Thank you.

15        MR. PRIETO:  The securities fraud claim will go first,

16   as your Honor noted.  Is it your intention to start the ERISA

17   trial immediately thereafter or give us some time to sort of --

18   depending on what happens with the securities fraud trial, give

19   us some time to prepare, both internally --

20        THE COURT:  Of course that would be reasonable and

21   logical, I think, but I would want, as I just said, I would

22   assume that the bench trial would commence on the ERISA claims

23   at a reasonably short time thereafter.  I don't want to leave

24   any impression at this pretrial conference that we're going to

25   continue them a long time.  I would like Mr. Finnerty to get a

1    resolution of his case, one way or the other, as timely as we

2    can, so both sides can get this matter behind them.

3            Most certainly, it would make sense for the parties to

4    consider and evaluate whatever happened in the first trial and

5    to have a period of time.   There may be some of the witnesses

6    that go to elements of the ERISA claim that are not elements of

7    the securities claim; therefore, would not be called in the

8    securities claim jury trial that would be called later.   You

9    need to get them organized and ready to go to trial.   So I

10   don't know.   I really don't know.   I don't know how long you

11   might want between there.

12           It might well be that you can resolve some of those

13   issues or, indeed, resolve the whole case.   A period of time,

14   30 days, 60 days, I don't care.   Whenever you want it.   If we

15   said it wouldn't be sooner than 30 days, does that help you

16   all?   Then we can make the evaluation of when it will be at the

17   end of the trial.

18           MR. COULSON:   Your Honor, the defendants are in

19   agreement that there should be some period of time, and we're

20   not looking for a huge amount of time.   I think it does make

21   sense to let the dust fall, and then we can focus in on what

22   remaining testimony needs to be presented to your Honor.   A lot

23   of them are legal issues in addition to fact issues for ERISA.

24   We think we will able to focus better if we have some amount of

25   time.

1          THE COURT:  Joyce, it will not be sooner than 30 days.

2    If you need a year, two years, or three years, you tell me.  We

3    will work with you all on that.  Right now, it will not be

4    sooner than 30 days.  I do want to get the trial concluded.

5    It's only fair to the parties.

6          Any other housekeeping?

7          MR. PRIETO:  It's been a while since I personally

8    tried a case before your Honor.  The last time was in 1988 in

9    Key West.  It was a long time ago, and it was a bench trial.

10          I wanted to ask you in terms of, for example, jury

11   selection, your practice and procedure in jury selection.

12          THE COURT:  I will get into that with you in just a

13   moment.  There may be other matters yet.  What I propose that

14   we talk about at this point, and Mr. Coulson may have some

15   questions, administrative or something.  Let me reserve on

16   those issues for just a moment.

17          Let's talk, at this point in time, about settlement.

18   We are in the jury context.  Any reluctance the parties would

19   have about settlement is alleviated somewhat by the fact that

20   it's jury and not a bench trial.  In a bench trial, I get into

21   this area more lightly than I do in a jury trial.

22          In a jury trial, I discuss with counsel what you've

23   talked about, about settlement.  We have experienced counsel

24   here.  I assume that you have done that.  So I inquire as to

25   your status and what the situation is with regard to

1    settlement.

2            Let me start with Mr. Segall or Mr. Prieto.  What is

3    the situation that you feel comfortable telling me about?

4            MR. SEGALL:  This case evolved from the original class

5    action where there were significant negotiations when the Class

6    was not certified last summer.  We did have some discussions

7    after that.  They didn't go very far, to be honest with the

8    Court.

9            Our view of it is that the defendants have, because

10   there are other plaintiffs out there that used to be in the

11   Class, some that have filed suit and some that have not, the

12   defendants have taken this case as being the bellwether case

13   that they want to try.  The offers were not significant.

14           When we were here last November talking about it, we

15   then said, and counsel agreed, that it was unlikely that we

16   were going to settle the case for the reasons that both sides

17   had.  We would almost for sure be trying the case come May.

18           Nothing between November and now has changed in that

19   regard.  We haven't really had any discussions on the subject

20   other than to say let's see what happens with Finnerty, and

21   then we will be able to talk about the rest of them.

22           The short answer is we are not discussing settlement

23   at this time, and therefore, it's not likely between now and

24   May the 7th that we're going to have a settlement.

25           THE COURT:  I understand perfectly.  I assume that

1   Mr. Coulson would be saying, basically, the same thing you just

2   said.  Let me assume that without knowing that that's where you

3   are.  It occurred to me before I even came in here this

4   morning.

5          With looking on the horizon, there were, at least to

6   my knowledge, two other cases, and there may be more than that.

7   The Bacon case and something else that, without much thought, I

8   think I foolishly accepted as a transfer from other divisions.

9   Nevertheless, I have three.  Mr. Bacon and --

10          MR. SEGALL:  And Freed.

11          THE COURT:  Mr. Freed, thank you.  It occurred to me,

12   logically, from a defense point of view, there would be a

13   concern that settlement with one could have an affect on the

14   others.  That's the defense standpoint.  So, therefore, it

15   occurred to me that perhaps not much progress had been made or

16   maybe could be made toward settlement.

17          However, we do have the device which by the procedure,

18   which I'm not a fan of, that is secret proceedings and secret

19   settlements, as my position is well known.  I don't approve of

20   that, and I don't permit that with increasing frequency.  The

21   people that want to try these cases try them in an open federal

22   court, and it comes out where it comes out.

23          Here, there is a procedure, which although I don't

24   like it, it may well be that, as a practical matter, it makes

25   sense in this particular case.  There were a limited number of

1   people that were affected by the sale of this company, the put

2   process, the sale, the whole thing.  That was around 67 people

3   in the original purported Class.

4           MR. SEGALL:  241.

5           THE COURT:  I don't know how I remember 67.  Did it

6   start with 67?

7           MR. SEGALL:  There may have been a subclass that had

8   67.

9           THE COURT:  I'm sure you're right, Mr. Segall.  I'm

10  not quarreling with you.  That is 271.  That is not quite like

11  what I have been dealing with these past couple of years in my

12  MDL bank case, which one bank alone, TD Bank, had 7.4 million

13  plaintiffs and 2,000 some odd numbers of sub-banks.

14          So 217 looks like a manageable amount of people

15  compared to what I've been dealing with, with all these others.

16  That is one bank out of 29.  There are millions and millions

17  and millions of people in that case.

18          What I'm getting at, though, is that here, if we are

19  dealing with, or at least I'm dealing with, the responsibility

20  of presiding over the three cases, Mr. Finnerty, Mr. Bacon,

21  Mr. Freed, it may well be that if a settlement could be arrived

22  at with Mr. Finnerty, who contends that the value of his stock,

23  as I read from your pleadings this morning, would be a million

24  three had those events not occurred.

25          It may well be that this could be one of those rare

1    cases where I would approve a settlement, a sealed settlement,

2    or a settlement not to be disclosed to other parties.  That

3    does involve the human aspect, of course, that these people,

4    231, are all interested.  Even if we were to seal a settlement,

5    it would remain sealed.  That's just human.  I don't want to

6    accuse anybody of any impropriety.  Even under the strictest of

7    injunctions not to discuss it, it could get out and it could

8    have an affect one way or the other.

9         So anything that would be structured in terms of an

10   injunction to the lawyers and the parties not discuss the

11   settlement would have to be made before we get to a point where

12   either the plaintiff wins, the defendant wins, or whatever.

13   But it might be that there would be a practical way to handle

14   this in some fashion that would enable this matter to be

15   resolved in some fashion without a jury-announced public

16   verdict.

17        You haven't had a chance to talk to Mr. Prieto, and

18   Mr. Coulson hasn't had a chance to talk to Ms. Bass, who gives

19   him all the good information here.  Do you think there is any

20   area there that would be practical, doable, with the Court's

21   help, of getting a confidential settlement, structured

22   settlement someway that would be beneficial to the parties to

23   talk about?

24        MR. SEGALL:  I think, from our point of view, there

25   would be -- I think the question, for some of the reasons that

```
 1   I hinted to in my comments a minute ago, it might be a question
 2   better posed to the defendants than to us.  I think we have
 3   been willing to have ongoing settlement discussions.
 4           THE COURT:  Do you think it is reasonably achievable
 5   or doable -- the last few words would have been is it
 6   achievable that even if we were to work out some sort of
 7   settlement, you all were able to work out something, even with
 8   the strictest language that you all could help me draft that
 9   said keep it quiet, keep it secret so it didn't evoke a big
10   bunch of activity all over the place, is that doable?
11           I know you and Mr. Prieto would, of course -- the
12   lawyers have no problem at all about keeping it confidential.
13   Is this a doable thing, do you think?  From your perspective,
14   do you believe that your client, if you told him not discuss
15   it, that he would do so?  Is it humanly possible, or is he so
16   involved with his co-workers and all that?
17           MR. SEGALL:  He doesn't work with them anymore, so he
18   doesn't have that particular problem.  I think that he would be
19   amenable and willing to keep silent on the subject of the
20   settlement.  I think that it's doable from our perspective in
21   that regard, yes.
22           THE COURT:  Thank you.
23           Mr. Coulson, is there anything to this, and then going
24   back to the whole big problem, possible discussion of a
25   possible structured confidential settlement with very strict
```

 1   wording on it that would enable you and your client and your

 2   colleagues to discuss settlement of the case.  Don't tell me

 3   what you think I want to hear.  I want your candid opinion.

 4            MR. COULSON:  Your Honor, when it comes to settlement,

 5   of course, I think we are on the record, so I need to be very

 6   circumspect.

 7            THE COURT:  Let's go off the record then.

 8            [There was a discussion off the record].

 9            THE COURT:  I promised Mr. Prieto and counsel that I

10   would go back on the record to take up some administrative

11   questions that you had.  We could start with Mr. Prieto.  You

12   were talking about jury selection.

13            My usual way is for you all to submit to me any

14   questions you wish for me to ask of the jury panel.  I go

15   through generally, and I ask you -- part of the preparation of

16   the jury is to have you join together and give me a summation

17   of what the case is about that I can read to the jury.  Your

18   pretrial stipulation pretty well covers that, I think.

19            I tell the jury what it's about.  I run through some

20   generalized explanation of what's going to happen, how long the

21   case is expected to take, and what they're expected, and then

22   we go through their personal backgrounds with them and then

23   consider any submitted voir dire questions that the lawyers

24   wish to ask.  I ask some of them, none of them, whatever may be

25   appropriate in my judgment, and then turn to the plaintiffs,

1  and you exercise your challenges.  You challenge and we put

2  more people in.

3        When you're fully satisfied, we turn and they

4  challenge, challenge.  When they finish, they submit, and then

5  you take up those that you have not already accepted, absent

6  some extraordinary matter where somebody in the second phase of

7  challenging indicates that he hates people that wear bright

8  ties.  All of you have got bright ties on.  Something crazy

9  comes up.

10       That's generally the way it's done here.  It may well

11 be that there is something unique about voir dire that would

12 impel deeper questioning, either by the court or by the

13 lawyers, on some phase of the case.  I don't see any at this

14 point.  We don't get into issues of law with the jury.  That

15 comes later in the Court's instructions and closing argument.

16       We don't get into whether they like the SEC or don't

17 like the SEC or whatever.  But, certainly, there are unique

18 things about this that you all may sense would have a bearing

19 on your exercise of challenges that I don't know about because

20 I'm not familiar as you all are with all the discovery.

21       I would like to have your written questions and your

22 statement of the case, what the case is all about.  Something I

23 just read to the jury, rather than my outlining my perception

24 of what the case is all about.  In some cases I don't bother

25 with it.

1          In straightforward criminal cases, I don't require the

2    lawyers, but in a case like this, we would want a case summary.

3    Your pretrial may do it, and then your projected voir dire.

4    That is generally the way, but there may be something unique

5    about this.  I'm not welded to that.

6          MR. PRIETO:  How long would you give for us opening

7    statement?

8          THE COURT:  I don't limit the lawyers on opening

9    statement.  I can, if you think it is desirable in this case.

10   I generally rely on good, experienced lawyers to make their

11   opening statements however they'd like.  You are not discussing

12   issues of law.  You are discussing what you expect the facts

13   will be, will show, the witnesses and what the witnesses are

14   going to say.  Not what the Judge is going to tell them in

15   closing arguments.  It's a factual thing.

16         A case like this could easily take an hour, two hours.

17   I don't know.  I'm not saying you need to take that much time.

18   It is important to the lawyers to get across to the jury what

19   the case is about, and that's the time to do it.

20         Closing argument is when it comes with we proved

21   element one, two, and three, whatever it is.  Closing argument

22   is where you get into all your discussion about the facts and

23   the law.  I don't have any particular.  We make the closing

24   arguments, we make it.  You want to try to agree on something

25   between you and Mr. Coulson.  Mr. Coulson said he needs an hour

```
 1   or two or whatever.  But you both get the same amount of time,

 2   opening and closing.  Whatever you all agree on.  I don't try

 3   to lock you all into these timeframes.

 4            MR. PRIETO:  Your Honor, what about the use of

 5   exhibits in opening?

 6            THE COURT:  If you all agree that they are going to be

 7   admitted in evidence, that's fine.  Use whatever you want to

 8   use.  If there is an objection about Exhibit 23, well then, of

 9   course, don't show it to the jury until you get a ruling, which

10   would come during the trial.  But I have no difficulty with

11   that.  Opening is where you get across to the jury what your

12   case is all about.

13            MR. PRIETO:  Your Honor, the last thing is trial days.

14   Does your Honor try cases all week long, or do you have a time

15   for hearings?

16            THE COURT:  Never in my life have I done any of the

17   above.  Always, in the thousands of the cases I've tried, I

18   only know one way do it.  We start on Monday.  The first week

19   we would start at 9:00.  We get the jury out of the way.  We

20   may agree that 9:30 is a little better in terms of giving

21   people time to get here.

22            We go through till about noon or 12:30 and break for

23   an hour and come back at 1:00 or 1:30, and then go on until to

24   usually around 5:00, 5:15, 5:30, depending on -- you have

25   Mr. Jones from Chicago and he wants to catch an airplane, and
```

 1   we need to go to 6:30 or 7:00, we go ahead and do it.  Maybe.

 2   It depends on the jury.  We try to accommodate witnesses

 3   catching airplanes and that sort of thing.  If we need to run a

 4   little longer one day, that's just the way it goes.

 5        Basically, we get a good, solid six hours in.  We take

 6   a ten-minute morning break, ten, 15 minutes.  Mid afternoon,

 7   ten or 15 minutes, Monday through Friday, and we keep going

 8   till we finish.  Using that process, normally, an estimated ten

 9   to twelve-day case will probably take less than ten to twelve

10   days.  Not always.  You're estimate is just to help me.  It is

11   not locked into anything.  If is turns out you guys need 15

12   days, so be it.  I'm not going to break your arm because you

13   are trying to give me your best estimate and you made a little

14   mistake.  That's life.  You didn't do it on purpose.

15        The only other thing I would ask, and this is more of

16   an imposition on the plaintiff, at least in the beginning of

17   the trial, is have your witnesses available.  Don't be caught

18   napping.  Don't think we've got a ten-day case here, I can tell

19   my expert to show up on the eighth day.

20        What's happened in the last couple of decades is we

21   don't have lawyers that try many cases.  They all get resolved

22   in mediation, arbitration, settlements.  The time when we tried

23   52 trials a year in this court, per Judge on average, are long

24   since gone.  We are now trying ten to 12.

25        That translates into 19 Judges carrying the full case

```
 1  load.  You can figure, 52, 53 average trials in the old days,
 2  dwindled down to ten, well, 53 times 20 would be whatever it
 3  would be.  It would be a thousand cases or something.  Ms. Bass
 4  will have to help me figure out the math.  Whatever it is, it's
 5  a lot of cases.
 6        It's dwindled down to where we're doing about ten a
 7  year per Judge.  That's 200 cases, civil and criminal.  It's
 8  nothing.  So we are not getting experience with the lawyers.
 9  Those that we have that are experienced, God bless you.  You
10  are a vanishing breed.  The new ones aren't getting a chance.
11  It's not their fault.
12        Having said that, I find that those that do get into
13  trial come in and they don't understand that they have got to
14  be careful about running out of witnesses.  Why is that
15  important?  You've got a jury sitting there.  They come every
16  day for, let's say, ten days.  They're on time.  They get here,
17  we get here, everybody's here.  It is hard on the plaintiff
18  because you go first.  Then it gets the same affect on the
19  defense.
20        All of a sudden, the third day of trial, a lawyer
21  invariably will say, "Judge, I told my witness to be here, but
22  I didn't expect him till Friday.  He's on a plane.  He's
23  landing.  If we can wait three hours."  If we do it, the jury's
24  got to wait three hours.  So I do get hard-nosed about that.  I
25  tell you in a friendly way up front; get your witnesses here.
```

1    Have more here than you think you need, because it goes faster

2    than your best estimate shows.  It just does.

3           I don't want the jury sitting here ten or 15 minutes

4    between witnesses.  That's no way to try a case.  I can't

5    persuade some of my younger Judges to that effect, but it all

6    depends on if you treat the trials as a professional situation

7    where people do it every day, day by day, until you finish.

8           I think it helps the lawyers to finish a trial, a

9    ten-day trial, in eight days.  You've got two days extra.

10   That's great.  You can go do your work then that you would have

11   done on Fridays or whatever.  Finish the trial, then you don't

12   have the trial on your mind and you can really work in your

13   office.

14          Now you've heard my philosophy about why I don't like

15   the way that we drifted into in the Southern District of trying

16   part-time trials.  It seems to work for some Judges and some

17   lawyers, but I just don't think it's the way to go.  I'd rather

18   use the system I've used for 42 years.  It seems to work pretty

19   well.  It's hard on you at the time.  You've got to work

20   through it.

21          If somebody is sick, that's a different problem.  I

22   and you have to always keep that jury in mind.  We don't want

23   them sitting here with nothing to do.  If they get irritated

24   with fact that the Judge is not moving the trial in what they

25   think is a reasonable manner, day by day by day, and they sense

1   it.

2        If they get idea that we are jerking them around while

3   we sit here fiddling around and keeping them waiting, they take

4   it out on somebody.  They can't take it out on the Judge, who

5   they're really upset with.  They take it out on the lawyers,

6   and that's not fair.

7        At the end of the day, the juries say a lot of nice

8   things about the Judge.  I think the jurors appreciate the fact

9   that we do it this way.  We don't do it Monday, Wednesday, and

10  Friday.  Can you imagine having a business out there and trying

11  to do it half-days, Monday, Wednesday, and Friday?

12       So that's the way it goes.  I'm sorry to take so much

13  time.  A big cautionary note is be sure to have your witnesses

14  here.  It's far better for a busy executive from Chicago to

15  wait a half a day than to have a bunch of folks here, whatever

16  their job, it is better than have them wasting half a day

17  waiting for him to get here.

18       I actually had one a couple months ago, a businessman

19  out here.  A lawyer had not put him under subpoena and relied

20  on him coming because he was going to be a witness for his

21  client, and he was.  I was under that impression the guy was

22  flying in here from somewhere, and I was mistaken about that.

23       Finally, it turned out he just had a Board meeting, so

24  he told the lawyer he couldn't be here.  The lawyer was

25  devastated.  He really needed him.  It was nonjury, so we

1    waited one afternoon.  Then it turned out he was coming from

2    Coral Gables.  So if you've got somebody that you think is

3    going to be helpful to your case, I don't know.  Be careful

4    because there's nothing I can do.

5           For the jury, we really have to move the case along.

6    That's generally the way it goes.

7           Any other questions?

8           MR. PRIETO:  Thank you, your Honor.

9           THE COURT:  Mr. Coulson has one I think.

10          MR. COULSON:  Yes, your Honor.  Just going back to

11   voir dire.  Is there a date by which you want the parties to

12   submit proposed questions that you may ask?

13          THE COURT:  I would think those sort of things, yes.

14   The voir dire, at least the Friday before I'm starting.  The

15   calendar call is when you are standing up and saying, "Judge,

16   we got good news, we settled the case."  That's Thursday at

17   2:00 before the Monday.  Anything in writing on that, that's

18   fine.  Just so I get to read it before that morning.  Thursday

19   would be a good time.  It will be helpful if you had a

20   stipulated statement of what I'm going to tell the jury, in lay

21   terms, what the case is all about.

22          MR. COULSON:  That we would put together, pretty much,

23   in the pretrial.

24          THE COURT:  I think it was.  You didn't -- sometimes

25   they will put in the plaintiff's point of view, the defendant's

1  point of view.  That's not a stipulation.

2          In any event, if you want to give me a joint thing,

3  that's helpful.  In fact, I would like for you to do it, even

4  if you just have to cut and paste.  A joint statement of what

5  the case is about, to tell the jury in lay language.  Make it

6  interesting for them.  And your proposed voir dire questions.

7          MR. COULSON:  We will give it to you Thursday at 5:00

8  p.m.

9          THE COURT:  Just bring them to the pretrial

10  conference, that's at 2:00.

11          MR. COULSON:  I know you, typically, do not allow the

12  attorneys to ask very many questions, and certainly, I would

13  not ask for a large amount of time, but given this is a very

14  important case, could have ramifications on other things, would

15  each of the sides be able to have, let's say, ten to 15 minutes

16  to ask questions of the jury in addition to the questions you

17  would ask?

18          THE COURT:  I ask you to jot down on a yellow pad

19  anything that I left out.  Given the careful screening of what

20  you give me in advance, I turn to the lawyers and say if you

21  have anything further, just jot it down.  The Marshal hands it

22  to me.  I may or may not ask it.  That's the way I usually do

23  it.  So there is no direct questions to the jury.  I know

24  lawyers like to make some presentation, but you get to do that

25  ten minutes later in your opening statement.

40

1          I would not imagine, at the conclusion of the

2   questions I ask -- 90 percent of the time, neither side has any

3   questions.  I think once you listen to the way it is done here,

4   you'll find that there's very little that would be left out.

5   If there is, you just hand it up.

6          I'm inclined, even though it is a big case, to just

7   follow my usual procedure.  You'd be surprised what less

8   experienced lawyers think, from watching TV, that they can say

9   to a jury.  Right now, I will stick with my usual procedure.

10          At the end of it, I'll give you time.  Maybe we will

11   take a ten-minute recess and let you write down questions.  I

12   don't care.  But, basically, we go through with it.  There is

13   very little left to do.  If I sense there is some prejudice or

14   obvious challenges -- I haven't had a challenge for cause in

15   ten years.

16          When I finish with it, if I sense that there's any

17   problem there, I simply turn to the lawyers and say I'm

18   inclined to the view that Mrs. Jones ought to be excused, any

19   objection?  You all stand up and say yes, we want her excused.

20          If I sense there is a problem, we get rid of them, or

21   we will take them last at end of the voir dire.  It works out

22   that I think you get the kind of jury you want.  If you have

23   something for cause at the end of all of it -- it never

24   happens.  We must be doing something right enough with the Bar

25   that it works.

1        MR. COULSON:  Your Honor, do we make our challenges in

2   the presence of the jury?

3        THE COURT:  Stand up on your two feet, and I turn to

4   Mr. Segall and say do you have any challenges, and they say

5   yes, we do.  We excuse them with our thanks.  I've already

6   explained to them that if they are excused for any reason, it

7   doesn't mean that anybody thinks they are not a good person to

8   be on this jury.  They're fine people, it's just that the

9   lawyers would prefer to have a different person from the panel.

10  By the time I'm finished with that, they think it's an honor to

11  get excused.

12        That, and then I turn to and you say we excuse two,

13  four, and six.  That's fine.  Three more are called.  We go

14  through the same thing.  I ask them if they heard the

15  questions, the answers, so on and so on.  A whole lot of

16  things.

17        Then to Mr. Prieto again, two, four, six, okay.  Then

18  it goes to you.  Your have three, six, and eight, fine.  We do

19  that till you're satisfied.  It goes back to him.  If you

20  challenged three, six, and eight, he gets three, six, and eight

21  till he's satisfied.  We do that until the jury is picked.  It

22  seems to work, so why should I change it.

23        MR. COULSON:  Your Honor, my memory is that you do not

24  allow backstriking; is that right?

25        THE COURT:  No backstriking, absent some extraordinary

1   reason.  There has to be a good reason.  Certainly, in a

2   criminal case, I can think of examples where something will

3   happen that will be a clear statement that the government

4   didn't know about or the defense didn't know about it.  If I

5   haven't already picked up on it, then we go back to that.  I

6   can't imagine what.

7          Once you pick the jury, it's your jury to that point.

8   If he accepts them, we swear them, and away we go.  If you

9   accept his, the same thing.

10         MR. COULSON:  My memory also is that you do not have

11  sidebars.  We object and then you make a ruling.

12         THE COURT:  Your just stand up and object.  Judge, I

13  object, I think it is hearsay.  I will say sustained.  At the

14  noon recess, Mr. Prieto says Judge, if you listened to me, I

15  would have said such and such.  Basically, we try to rule on

16  those just as they come up.  You just stand up and object.

17  Generally, you will find that it goes pretty smoothly.

18         Anyway, you just stand up and object.  I don't do

19  sidebars because we can't get the Court Reporter up here to

20  take it down.  He can't hear it.  I can't hear it.  You can't

21  hear it.  If you have something that is really sidebar, say,

22  "Judge, I've really got something" and I say, "Fine, ladies and

23  gentlemen, out you go," and you argue it out of the presence of

24  the jury.  Just say, "Judge, I need to take up something

25  outside the presence of the jury."  We keep it short.

1           MR. COULSON:  One last thing on jury selection.  For

2    the jury trial, there will be two defendants.  There is the

3    company, Stiefel Laboratories, and then Charles Stiefel

4    himself.  Do we have six peremptories in total for the defense?

5           THE COURT:  What are you moving for?  A total of 12?

6           MR. COULSON:  Yeah, it would be a total of 12, six for

7    the defense and six for the plaintiffs.

8           THE COURT:  No, no.  Are you moving for six for

9    Mr. Stiefel and six for the company, a total of 12, and they

10   get twelve also, or are you suggesting that you think six is

11   appropriate?

12          MR. COULSON:  I would say six.

13          THE COURT:  In a civil case, we have six for the

14   defense, six for the plaintiff.

15          MR. COULSON:  Jury instructions.  Is there a date you

16   would like jury instructions submitted?

17          THE COURT:  In this particular case, it might be

18   helpful for each of you to file a trial brief at that calendar

19   call, a trial summary of what you are expecting.  If you wish

20   to file a trial brief, it is helpful to me.

21          On the jury instructions, I would like them a day or

22   two before the charge conference, which will immediately follow

23   the conclusion of the rebuttal case of the defendant.  Excuse

24   me, the rebuttal of the plaintiff.  I would like it a day or

25   two before.  Maybe you want to give them to me up front.  I

```
 1   don't care.  It's a big case.

 2          Let's ask for the proposed jury instructions at the

 3   calendar call at 2:00 before we start.  We can modify them

 4   easily later on or change them or withdraw them or whatever.

 5          Thank you.  See you in May.  I think it is May 7th.

 6              [Court adjourned at 11:30 a.m.]

 7

 8                  C E R T I F I C A T E

 9       I hereby certify that the foregoing is an accurate

10   transcription of proceedings in the above-entitled matter.

11

12

13

14                      /S/ LARRY HERR

     _____     _____

15      DATE             LARRY HERR, RPR-CM-RMR-FCRSC

                         Official Federal Court Reporter

16                       United States District Court

                         Wilkie D. Ferguson Federal Courthouse

17                       400 No. Miami Avenue, Ste. 8N09

                         Miami, FL  33132 - 305/523-5290

18                       Email:  larry_herr@flsd.uscourts.gov

19

20

21

22

23

24

25
```

**A**

**ability** 11:5
**able** 3:18 4:13 7:8
11:5 12:15 13:3
23:24 25:21 29:7
39:15
**about** 4:18 5:3 6:15
6:22,24,24 7:7,10
8:20 10:16 11:6,7
11:15 13:11,21,23
14:4,6,7 15:21
16:5,7,9,16,17
17:12,19 18:4,4,7
18:8,8 20:24 24:14
24:17,19,23,23
25:3,14,21 28:23
29:12 30:12,17,19
31:11,18,19,22,24
32:5,19,22 33:4,8
33:12,22 35:6,14
35:24 36:14 37:8
37:22 38:21 39:5
42:4,4
**above** 33:17
**above-entitled** 44:10
**absent** 31:5 41:25
**absolutely** 19:11
22:5,7
**accept** 10:21 42:9
**accepted** 26:8 31:5
**accepts** 42:8
**accommodate** 34:2
**accountant** 4:21
**accurate** 44:9
**accuse** 28:6
**achievable** 29:4,6
**across** 32:18 33:11
**acted** 12:11
**action** 4:24 25:5
**actions** 4:4
**activity** 29:10
**actually** 4:9 16:22
37:18
**addition** 23:23 39:16
**address** 4:15
**adjourned** 44:6
**administrative**
24:15 30:10
**admissibility** 6:15
**admissible** 6:17 7:12
7:22 9:9
**admitted** 6:4 33:7
**advance** 39:20
**affect** 26:13 28:8
35:18
**affected** 27:1
**after** 9:22 15:9,14
17:15 18:1,2,10
21:18,18 25:7
**afternoon** 34:6 38:1
**again** 3:9 41:17
**agencies** 9:1 10:10
15:23
**agency** 8:20 13:24

15:25 16:16
**ago** 24:9 29:1 37:18
**agree** 32:24 33:2,6
33:20
**agreed** 4:3 25:15
**agreement** 16:21
23:19
**ahead** 34:1
**airplane** 33:25
**airplanes** 34:3
**al** 1:5,8
**alert** 13:12
**alerted** 13:16 20:9
**allegation** 4:18,20,20
5:2
**allegations** 4:24
**alleged** 7:19
**alleges** 4:23
**alleviated** 24:19
**allow** 39:11 41:24
**allowed** 4:8
**almost** 19:13 25:17
**alone** 7:21 27:12
**along** 38:5
**already** 3:3 5:22
31:5 41:5 42:5
**alternative** 4:12,15
**although** 4:14 26:23
**always** 33:17 34:10
36:22
**amenable** 29:19
**amount** 23:20,24
27:14 33:1 39:13
**analysis** 9:12 10:22
**and/or** 6:10
**answer** 25:22
**answers** 41:15
**anticipate** 22:9
**anybody** 7:12,15
28:6 41:7
**anymore** 29:17
**anything** 7:13,16
10:5 11:2 13:4
16:15 20:11 28:9
29:23 34:11 38:17
39:19,21
**Anyway** 42:18
**APPEARANCES**
1:13 2:1
**appears** 4:18
**appended** 3:10
**appraisals** 19:12
**appraiser** 5:5
**appreciate** 37:8
**appropriate** 30:25
43:11
**approve** 26:19 28:1
**April** 1:7 16:21
**arbitration** 34:22
**area** 11:4 24:21
28:20
**argue** 4:12 42:23
**argued** 6:2
**arguing** 18:24

**argument** 5:14
31:15 32:20,21
**arguments** 32:15,24
**arm** 34:12
**around** 15:3 17:24
27:2 33:24 37:2,3
**arrived** 27:21
**asked** 4:15
**asking** 10:17 14:13
17:13
**aspect** 3:21,25 21:14
28:3
**aspects** 4:14
**assume** 22:22 24:24
25:25 26:2
**assumed** 18:22
**Atlanta** 2:7
**attention** 16:15,17
**attorneys** 39:12
**audit** 7:4,4,5,9 14:5
18:6
**audited** 8:19
**auditor** 7:9 19:2
**audits** 5:23,24 6:3,8
6:10,15,16,21 7:1
7:3,6,7 8:12 9:22
11:8,11,14,15,19
12:24 13:12,23
14:4,22 15:23 16:7
18:12 19:5 20:8
**August** 16:23 17:16
17:21
**authority** 5:13
**available** 34:17
**Avenue** 1:16,23 2:3
2:11 44:17
**average** 34:23 35:1
**aware** 11:21 14:25
16:24 17:2,4
**away** 42:8
**a.m** 44:6

**B**

**back** 18:25 29:24
30:10 33:23 38:10
41:19 42:5
**background** 19:23
**backgrounds** 30:22
**backstriking** 41:24
41:25
**Bacon** 1:4 26:7,9
27:20
**bad** 15:21
**bank** 19:21 27:12,12
27:12,16
**bar** 10:12 40:24
**based** 20:4,4
**basically** 26:1 34:5
40:12 42:15
**basis** 9:16 19:17
21:16
**Bass** 2:2 3:8 28:18
35:3
**bassh@gtlaw.com**

2:4
**bearing** 31:18
**Becker** 7:5
**before** 1:11 4:7 5:6
5:22 9:6 12:11
16:25 17:2,11
20:11 22:3 24:8
26:3 28:11 38:14
38:17,18 43:22,25
44:3
**began** 15:2
**beginning** 34:16
**behind** 23:2
**being** 15:5 21:1
25:12
**believable** 11:16
13:6
**believe** 3:3,16 9:17
19:8 21:24 29:14
**bellwether** 25:12
**bench** 21:16 22:22
24:9,20,20
**beneficial** 28:22
**Bernard** 7:5
**best** 15:9 34:13 36:2
**better** 23:24 29:2
33:20 37:14,16
**between** 23:11 25:18
25:23 32:25 36:4
**bifurcated** 21:16
**big** 14:24 29:9,24
37:13 40:6 44:1
**bit** 19:20
**bless** 35:9
**Board** 37:23
**Bogush** 4:18 5:4
6:25 7:2,10 8:12
9:11 10:11 12:12
13:17,25 16:12,18
19:11,17,19 20:5
20:24
**Bogush's** 8:2,17,20
10:16 18:6
**bold** 11:1
**both** 14:13,18 20:20
22:19 23:2 25:16
33:1
**bother** 31:24
**break** 33:22 34:6,12
**breed** 35:10
**Brickell** 1:16 2:3
**brief** 43:18,20
**briefed** 4:9
**bright** 31:7,8
**bring** 6:5 7:23 10:12
13:3 14:15 19:24
20:18,20 21:2 39:9
**brought** 7:25 8:1,2
9:6
**bunch** 29:10 37:15
**business** 37:10
**businessman** 37:18
**busy** 37:14

**C**

**C** 44:8,8
**calendar** 38:15
43:18 44:3
**calender** 22:3,7
**call** 7:9 9:15,21 10:2
38:15 43:19 44:3
**called** 23:7,8 41:13
**came** 5:22 8:24 9:18
16:15,16 18:17,17
26:3
**candid** 30:3
**care** 23:14 40:12
44:1
**careful** 11:3 35:14
38:3 39:19
**carrying** 34:25
**case** 1:3 5:13 8:5,8
10:2 14:23 21:10
21:10,21 22:10
23:1,13 24:8 25:4
25:12,12,16,17
26:7,25 27:12,17
30:2,17,21 31:13
31:22,22,24 32:2,2
32:9,16,19 33:12
34:9,18,25 36:4
38:3,5,16,21 39:5
39:14 40:6 42:2
43:13,17,23 44:1
**cases** 7:15 21:12
22:8 26:6,21 27:20
28:1 31:24 32:1
33:14,17 34:21
35:3,5,7
**catch** 35:22
**catching** 34:3
**caught** 34:17
**cause** 40:14,23
**cautionary** 37:13
**certain** 4:11
**certainly** 16:14 23:3
31:17 39:12 42:1
**certified** 25:6
**certify** 44:9
**cetera** 11:22
**challenge** 31:1,4,4
40:14
**challenged** 41:20
**challenges** 31:1,19
40:14 41:1,4
**challenging** 31:7
**chance** 28:17,18
35:10
**change** 41:22 44:4
**changed** 25:18
**charge** 43:22
**Charles** 8:10 43:3
**Charlie** 5:3 8:16
19:13
**checked** 9:18
**Chicago** 33:25 37:14
**chief** 8:8
**chronology** 12:5

circumspect 30:6
cited 5:12
civil 4:6,24 9:4 22:8
  35:7 43:13
claim 14:17,17 22:15
  23:6,7,8
claims 21:16 22:22
clarification 21:23
  21:25
class 25:4,5,11 27:3
clear 42:3
Clearly 8:1 18:6
CLERK 22:4
client 29:14 30:1
  37:21
closed 16:25 17:2,18
  17:20
closing 15:3 16:22
  17:11,12 31:15
  32:15,20,21,23
  33:2
colleagues 30:2
come 4:4,8,17 5:15
  6:18,19,25 7:1,6
  8:6,9,22 10:1,9,23
  14:9,18 16:22
  20:23 25:17 33:10
  33:23 35:13,15
  42:16
comes 10:19 26:22
  26:22 30:4 31:9,15
  32:20
comfortable 25:3
coming 5:24 6:8
  37:20 38:1
commence 22:22
comments 29:1
Commission 4:7
committee 19:13
company 27:1 43:3,9
compared 27:15
competent 20:25
  21:1
complaint 4:6,13,17
  4:19,24 5:15 6:24
  7:11,13,16,19 9:4
  9:5,8,9,14,15,21
  9:23 13:18,19,21
  14:7 20:16,24,25
complaints 7:14
completely 5:3,11
  18:14
completeness 18:15
concern 26:13
concerning 19:5
concluded 6:3,7 24:4
conclusion 6:22 11:7
  40:1 43:23
conclusory 4:20
conduct 9:5
conducted 8:11
conducting 19:12
conference 1:11 3:2
  3:12 22:24 39:10

43:22
confidential 28:21
  29:12,25
confusion 5:9
consider 23:4 30:23
contend 9:17
contends 27:22
contest 18:12
context 13:11 24:18
continue 22:25
contradictory 6:10
CONT'D 2:1
convicted 10:18
Coral 38:2
correct 5:21 9:13
  15:10 16:4 17:6
  22:5,7
Coulson 1:22 3:7,20
  3:20 5:21 10:14
  11:24 12:4,10,17
  13:15,19 14:10,18
  15:2,11 17:19,25
  19:8,11 22:11,13
  23:18 24:14 26:1
  28:18 29:23 30:4
  32:25,25 38:9,10
  38:22 39:7,11 41:1
  41:23 42:10 43:1,6
  43:12,15
coulsond@gtlaw.c...
  1:24
Coulson's 17:1
counsel 3:17 24:22
  24:23 25:15 30:9
couple 22:8 27:11
  34:20 37:18
course 6:9 11:14
  22:20 28:3 29:11
  30:5 33:9
court 1:1 2:10,10 3:1
  3:7,24 5:18 6:14
  6:18,20 7:6 9:11
  9:14 10:8 12:8,14
  12:20 13:18,22
  14:11,20 15:8,12
  16:2,5,24 17:4,7
  17:10,22 18:21
  19:7,15 22:1,2,5
  22:14,20 24:1,12
  25:8,25 26:11,22
  27:5,9 29:4,22
  30:7,9 31:12 32:8
  33:6,16 34:23 38:9
  38:13,24 39:9,18
  41:3,25 42:12,19
  43:5,8,13,17 44:6
  44:15,16
Courthouse 2:11
  44:16
Courtroom 3:4
Court's 28:20 31:15
covers 30:18
co-workers 29:16
crazy 31:8

create 14:16,21
  15:24
creating 15:22
credibility 19:23
criminal 22:8 32:1
  35:7 42:2
cross 7:8 8:4 10:9
  12:15 13:3
cross-examination
  6:22 8:9 10:3
  12:21 16:14
cross-examine 9:3
  11:15 21:3
cross-examined 20:2
cross-examining
  20:19
culminated 16:11
cut 39:4

D
D 2:5,11 44:16
danger 5:9
date 38:11 43:15
  44:15
dates 17:8
David 1:22 3:20
day 14:11 34:4,19
  35:16,20 36:7,7,7
  36:25,25,25 37:7
  37:15,16 43:21,24
days 21:17 23:14,14
  23:15 24:1,4 33:13
  34:10,12 35:1,16
  36:9,9
deal 17:18,20 19:8
dealing 27:11,15,19
  27:19
deals 8:1
decades 34:20
December 4:6 13:19
decide 8:5
deciding 6:23
decision 12:6 16:11
deeper 31:12
defendant 1:22 2:2
  6:21 8:15 28:12
  43:23
defendants 1:9 4:1,3
  4:9 7:23 8:10
  23:18 25:9,12 29:2
  43:2
defendant's 3:15
  38:25
defense 8:3 11:9
  26:12,14 35:19
  42:4 43:4,7,14
denial 4:16
denied 4:13 8:16
denying 6:7
Department 5:23
  6:3,17 7:4 8:11,18
  8:24 9:18 10:4
  18:17,20
depending 22:18

33:24
depends 10:19 34:2
  36:6
deposed 9:5,7
Deputy 3:4 22:4
desirable 32:9
details 17:19
devastated 37:25
device 26:17
different 7:21 9:4
  10:8 20:18 36:21
  41:9
differently 13:10
difficulty 33:10
dire 30:23 31:11
  32:3 38:11,14 39:6
  40:21
direct 20:19 39:23
disclosed 28:2
discovery 31:20
discuss 24:22 28:7
  28:10 29:14 30:2
discussed 3:16
discussing 25:22
  32:11,12
discussion 29:24
  30:8 32:22
discussions 25:6,19
  29:3
District 1:1,1,12
  2:10 36:15 44:16
DIVISION 1:2
divisions 26:8
divorce 7:15
doable 28:20 29:5,10
  29:13,20
docket 5:25 6:12
  8:14 21:9
document 5:12
documents 3:10 6:10
  9:21 16:1
doing 16:11 17:25
  35:6 40:24
done 9:22 15:16
  24:24 31:10 33:16
  36:11 40:3
door 10:12
doubt 18:6 20:7,21
down 7:18 35:2,6
  39:18,21 40:11
  42:20
draft 29:8
drafted 9:15
drifted 36:15
driving 10:18
during 6:11 20:11
  21:11,12,23 33:10
dust 23:21
dwindled 35:2,6

E
E 44:8,8
each 39:15 43:18
earlier 4:10 5:8

easily 32:16 44:4
effect 5:13 11:1 13:7
  36:5
eight 36:9 41:18,20
  41:20
eighth 34:19
either 8:19 28:12
  31:12
element 32:21
elements 23:6,6
elicit 18:19
Email 1:17,20,24 2:4
  2:8,12 44:18
employees 17:14
enable 28:14 30:1
end 6:11 8:21 10:17
  13:13 23:17 37:7
  40:10,21,23
enforcement 6:6 9:2
  9:7 19:6
enough 40:24
entered 6:12
entitled 8:4 9:2 10:6
  14:23
entry 5:25 6:13 8:14
erisa 14:16 21:16
  22:16,22 23:6,23
ESBP 8:19,25 10:5
  12:11 19:12,13
ESQ 1:15,18,18,22
  2:2,5
estimate 20:22 21:15
  34:10,13 36:2
estimated 21:17 34:8
et 1:5,8 11:22
evaluate 23:16
evaluation 11:22
  23:16
even 5:16 26:3 28:4
  28:6 29:6,7 39:3
  40:6
event 39:2
events 17:10 27:24
ever 7:14
every 20:22 35:15
  36:7
everybody's 35:17
everything 9:19
  12:22 14:22 18:23
  20:6
evidence 4:2,3,8,11
  4:18 5:1,16 6:5,11
  12:18 16:7 17:11
  20:25 21:1,4 33:7
evoke 29:9
evolved 25:4
examined 11:11
example 24:10
examples 42:2
Exchange 4:7
exclude 4:1,11
excuse 12:8 41:5,12
  43:23
excused 40:18,19

41:6,11
**executive** 37:14
**exercise** 31:1,19
**Exhibit** 33:8
**exhibits** 33:5
**existed** 12:18
**expect** 8:7 32:12
35:22
**expected** 30:21,21
**expecting** 43:19
**experience** 35:8
**experienced** 24:23
32:10 35:9 40:8
**expert** 34:19
**explained** 41:6
**explanation** 30:20
**extra** 36:9
**extraordinary** 31:6
41:25
**e-mail** 11:21 19:2
**e-mails** 19:18

___

**F**

**F** 44:8
**fact** 5:1 20:9 23:23
24:19 36:24 37:8
39:3
**facts** 32:12,22
**factual** 32:15
**fair** 24:5 37:6
**fairness** 18:16
**faith** 7:16
**fall** 23:21
**familiar** 31:20
**fan** 26:18
**far** 25:7 37:14
**fashion** 7:24 8:1
14:14 28:14,15
**faster** 36:1
**fault** 35:11
**federal** 2:10,11
26:21 44:15,16
**feel** 25:3
**feet** 41:3
**Ferguson** 2:11 44:16
**few** 15:4 29:5
**fiddling** 37:3
**figure** 20:21 35:1,4
**file** 43:18,20
**filed** 4:6,11 5:8 9:23
13:19 14:8 15:5,6
15:10 17:5,20 18:1
18:2,7,11 25:11
**final** 1:11 3:1,11
**Finally** 37:23
**find** 11:24 22:2
35:12 40:4 42:17
**finding** 9:11 17:14
**findings** 8:8 9:8
**fine** 9:19 13:2,5,9
14:22 15:23 20:10
33:7 38:18 41:8,13
41:18 42:22
**finger** 13:15

**finish** 31:4 34:8 36:7
36:8,11 40:16
**finished** 41:10
**Finnerty** 3:2 12:6
15:5,5,10 17:5,19
18:1,2,10,11 22:25
25:20 27:20,22
**Finnerty's** 15:14
17:15,17
**first** 3:11 10:6 11:6
14:25 21:15,22
22:15 23:4 33:18
35:18
**FL** 1:16,20,24 2:4,12
44:17
**flag** 14:24
**Flagler** 1:19
**FLORIDA** 1:1,7
**flying** 37:22
**focus** 23:21,24
**folks** 37:15
**follow** 21:17 40:7
43:22
**follows** 4:21 6:9
**foolishly** 26:16
**foregoing** 44:9
**form** 7:10
**forth** 4:2
**Forum** 2:7
**found** 8:24 9:1
**four** 41:13,17
**fraud** 4:21 9:12
22:15,18
**Freed** 26:10,11
27:21
**frequency** 26:20
**Friday** 34:7 35:22
37:10,11 38:14
**Fridays** 36:11
**friendly** 35:25
**from** 3:21 5:4 6:8 7:4
7:4,5 10:3,4,10,14
11:24 13:8 15:21
17:1,24 18:19 21:9
21:25 25:4 26:8,12
27:23 28:24 29:13
29:20 33:25 37:14
37:22 38:1 40:8
41:9
**front** 35:25 43:25
**full** 34:25
**fully** 31:3
**further** 39:21

___

**G**

**GA** 2:7
**Gables** 38:2
**general** 10:15
**generalized** 30:20
**generally** 30:15
31:10 32:4,10 38:6
42:17
**gentlemen** 42:23
**gets** 35:18 41:20

**getting** 8:3 9:20
27:18 28:21 35:8
35:10
**give** 22:17,18 30:16
32:6 34:13 39:2,7
39:20 40:10 43:25
**given** 3:3 39:13,19
**gives** 28:18
**giving** 13:11 19:17
33:20
**Glaxo** 16:21 17:20
**go** 12:5,25 13:14
17:10 18:25 22:15
23:6,9 25:7 30:7
30:10,14,22 33:22
33:23 34:1,1 35:18
36:10,17 40:12
41:13 42:5,8,23
**God** 35:9
**goes** 21:6 34:4 36:1
37:12 38:6 41:18
41:19 42:17
**going** 3:18 7:1,10,18
8:10,22,23,25 10:1
10:23,25 11:9,25
12:3,8 14:16 18:9
18:10,16,16,22,23
18:24 19:22 20:23
22:24 25:16,24
29:23 30:20 32:14
32:14 33:6 34:7,12
37:20 38:3,10,20
**gone** 13:20 34:24
**good** 3:7,20 5:20
7:16 13:23 14:4
19:20,21 28:19
32:10 34:5 38:16
38:19 41:7 42:1
**goods** 15:21
**Gordich** 1:15
**government** 13:24
42:3
**governmental** 8:20
9:1 10:10 15:23,25
16:16
**great** 36:10
**Greenberg** 1:23 2:3
2:6
**group** 6:23
**GSK** 15:4
**guess** 20:13
**guy** 19:20 37:21
**guys** 34:11

___

**H**

**half** 37:15,16
**half-days** 37:11
**hand** 40:5
**handle** 28:13
**hands** 15:15 39:21
**handwriting** 22:6
**happen** 12:3 30:20
42:3
**happened** 7:19 19:9

23:4 34:20
**happens** 22:18 25:20
40:24
**hard** 35:17 36:19
**hard-nosed** 35:24
**hates** 31:7
**having** 10:23 35:12
37:10
**headed** 11:21
**hear** 10:14 12:3 30:3
42:20,20,21
**heard** 10:3,4 36:14
41:14
**hearing** 5:4 10:20
**hearings** 33:15
**hearsay** 4:25 5:12
9:10 20:17 42:13
**help** 23:15 28:21
29:8 34:10 35:4
**helpful** 38:3,19 39:3
43:18,20
**helps** 36:8
**her** 40:19
**HERR** 2:9 44:14,15
**he'll** 16:18
**HILARIE** 2:2
**him** 7:9 9:16,22 11:3
11:6,9 12:23 14:1
14:7,11,12,15
16:13 17:13 19:17
20:9,10 21:2,3
28:19 29:14 35:22
37:17,19,20,25
41:19
**himself** 43:4
**hinted** 39:1
**honest** 25:7
**honor** 3:20 4:10,13
4:17 5:20,21,22,24
6:2,7,8,12,16 7:3
8:7,16 9:9,25 12:5
13:15 14:19 15:22
15:24 16:20 17:1
18:14,18 19:11
21:21,23 22:13,16
23:18,22 24:8 30:4
33:4,13,14 38:8,10
41:1,10,23
**HONORABLE** 1:11
**horizon** 26:5
**hour** 32:16,25 33:23
**hours** 12:16 34:5
35:23,24
**housekeeping** 24:6
**huge** 23:20
**human** 28:3,5
**humanly** 29:15

___

**I**

**idea** 37:2
**imagine** 14:13 37:10
40:1 42:6
**immediately** 22:17
43:22

**impel** 31:12
**important** 16:20
32:18 35:15 39:14
**imposition** 34:16
**impression** 14:16,21
22:24 37:21
**impropriety** 28:6
**inadmissible** 4:25
5:12
**INC** 1:8
**inclined** 40:6,18
**including** 8:18 22:9
**increasing** 26:20
**indeed** 23:13
**independent** 19:2
**independents** 18:6
**indicate** 11:19 18:13
**indicated** 3:13,18
16:17
**indicates** 31:7
**indication** 10:10
13:24
**indications** 8:17
12:12,16
**individual** 4:4
**inference** 8:25 15:23
15:24
**information** 11:6
15:9,15 28:19
**injunction** 28:10
**injunctions** 28:7
**inquire** 3:17 24:24
**instructions** 31:15
43:15,16,21 44:2
**intend** 11:25 12:1
**intention** 19:5 22:16
**interested** 15:1 28:4
**interesting** 39:6
**Internal** 8:18
**internally** 22:19
**interview** 16:2
**introducing** 19:6
**invariably** 35:21
**investigated** 10:11
11:2 20:6
**investigation** 9:5
14:5 15:2,6,8,13
15:16 16:11,16
17:3,12 18:9,10
**investigations** 4:2
**investment** 12:6
**involve** 28:3
**involved** 29:16
**involves** 3:25
**irrelevant** 5:1,3,12
**irritated** 36:23
**IRS** 5:23 6:4,17 7:5
8:11,23 10:4 18:17
18:20
**issue** 4:9 13:16 18:18
21:5,7
**issues** 3:19 8:19
23:13,23,23 24:16
31:14 32:12

**item** 3:11,21
**items** 3:15,16

_____

**J**

**JAMES** 1:4,11
**January** 12:12
**jerking** 37:2
**job** 37:16
**join** 30:16
**joint** 3:9,22 39:2,4
**Jones** 7:9 33:25
    40:18
**jot** 39:18,21
**Joyce** 22:2 24:1
**Judge** 1:12 4:7 7:20
    32:14 34:23 35:7
    35:21 36:24 37:4,8
    38:15 42:12,14,22
    42:24
**Judges** 34:25 36:5
    36:16
**judgment** 8:16 30:25
**July** 15:3,6 16:10
    17:9,17,20,21
**juncture** 10:6
**juries** 37:7
**jurors** 37:8
**jury** 5:10 14:21
    21:14,18 23:8
    24:10,11,18,20,21
    24:22 30:12,14,16
    30:17,19 31:14,23
    32:18 33:9,11,19
    34:2 35:15 36:3,22
    38:5,20 39:5,16,23
    40:9,22 41:2,8,21
    42:7,7,24,25 43:1
    43:2,15,16,21 44:2
**jury's** 35:23
**jury-announced**
    28:15
**just** 9:21 13:15,19
    14:15 16:7 20:25
    21:25 22:21 24:12
    24:16 26:1 28:5
    31:23 34:4,10 36:2
    36:17 37:23 38:10
    38:18 39:4,9,21
    40:5,6 41:8 42:12
    42:16,18,24

_____

**K**

**Katy** 10:12
**keep** 11:3 29:9,9,19
    34:7 36:22 42:25
**keeping** 29:12 37:3
**Key** 24:9
**kind** 10:24 40:22
**KING** 1:11
**knew** 13:4 14:5
    16:17 17:11,12,22
    18:4 19:1
**know** 8:5 10:25 12:3
    12:5 14:3,6,8

**15:21** 16:10,12,13
    16:20,24 17:19
    18:3,4,7,8,8,21,22
    18:25,25 19:22,22
    20:22 21:4,4 23:10
    23:10,10 27:5
    29:11 31:19 32:17
    33:18 38:3 39:11
    39:23 42:4,4
**knowing** 26:2
**knowledge** 11:7,15
    11:19 14:25 19:18
    20:13 26:6
**known** 13:21 15:17
    17:23 26:19

_____

**L**

**Labor** 5:23 6:3,17
    7:4,8 8:11,18,24
    9:18 10:14 18:17,20
**Laboratories** 1:8 3:3
    15:4,17 43:3
**ladies** 42:22
**landing** 35:23
**language** 29:8 39:5
**large** 39:13
**LARRY** 2:9 44:14
    44:15
**larry_herr@flsd.u...**
    2:12 44:18
**last** 24:8 25:6,14
    29:5 33:13 34:20
    40:21 43:1
**late** 17:21
**later** 14:8 16:3 23:8
    31:15 39:25 44:4
**law** 31:14 32:12,23
**LAWRENCE** 1:11
**lawsuit** 15:5,5,10,14
    17:5,7,15,17,20
    18:1,2,7,11
**lawsuits** 4:2
**lawyer** 9:15 20:23
    35:20 37:19,24,24
**lawyers** 20:18 28:10
    29:12 30:23 31:13
    32:2,8,10,18 34:21
    35:8 36:8,17 37:5
    39:20,24 40:8,17
    41:9
**lawyer's** 21:2
**lay** 38:20 39:5
**learned** 18:5
**least** 26:5 27:19
    34:16 38:14
**leave** 22:23
**left** 22:10 39:19 40:4
    40:13
**legal** 23:23
**lends** 19:23
**less** 34:9 40:7
**let** 3:17 11:24 12:3
    23:21 24:15 25:2
    26:2 40:11

**let's** 7:9 12:5 17:10
    17:22 21:7 22:2
    24:17 25:20 30:7
    35:16 39:15 44:2
**lied** 13:6
**life** 7:15 33:16 34:14
**lightly** 24:21
**like** 10:17 19:20
    22:25 26:24 27:10
    27:14 31:16,17,21
    32:2,11,16 36:14
    39:3,24 43:16,21
    43:24
**likely** 25:23
**limine** 3:15,22 4:1,11
    5:9,22 8:4 10:24
    12:2,4
**limit** 32:8
**limited** 26:25
**listen** 20:3 40:3
**listened** 42:14
**listening** 14:12
**little** 9:4 19:20 33:20
    34:4,13 40:4,13
**load** 35:1
**lock** 33:3
**locked** 34:11
**logical** 22:21
**logically** 26:12
**long** 22:25 23:10
    24:9 30:20 32:6
    33:14 34:23
**longer** 34:4
**look** 8:14
**looked** 9:1 14:22
**looking** 23:20 26:5
**looks** 27:14
**lot** 23:22 35:5 37:7
    41:15
**lying** 12:21

_____

**M**

**made** 5:2 7:9 9:8,11
    12:6 13:5 20:16
    26:15,16 28:11
    34:13
**make** 11:1 18:12
    23:3,16,20 32:10
    32:23,24 39:5,24
    41:1 42:11
**makes** 4:19 26:24
**man** 9:21 20:3,5
**manageable** 27:14
**manner** 36:25
**many** 12:12 34:21
    39:12
**Marshal** 39:21
**math** 35:4
**Matt** 3:6
**matter** 3:2,12,13
    10:19 14:2 18:15
    23:2 26:24 28:14
    31:6 44:10
**matters** 24:13

**MATTHEW** 1:18
**may** 3:14,14 4:10 6:9
    6:9 11:3,3,3 12:1
    12:21 13:4,25
    19:25 21:11,13,24
    21:24,25 22:4,6,6
    22:11 23:5 24:13
    24:14 25:17,24
    26:6,24 27:7,21,25
    30:24 31:10,18
    32:3,4 33:20 38:12
    39:22,22 44:5,5
**maybe** 13:9 26:16
    34:1 40:10 43:25
**MDL** 27:12
**mean** 18:3 41:7
**mediation** 34:22
**meet** 9:20
**meeting** 37:23
**memory** 41:23 42:10
**mentioned** 5:16
**merely** 4:19
**merger** 15:3
**methodology** 4:22
    5:5 8:13
**methods** 8:21
**Miami** 1:2,7,16,20
    1:24 2:4,11,12
    44:17,17
**Mid** 34:6
**might** 8:5 10:9 11:15
    11:16,16,17 18:8
    23:11,12 28:13
    29:1 43:17
**million** 27:12,23
**millions** 27:16,16,17
**mind** 5:3 11:20 16:6
    16:10 19:18 20:1
    36:12,22
**minute** 29:1
**minutes** 34:6,7 36:3
    39:15,25
**misleading** 5:9
**misstated** 13:5
**mistake** 34:14
**mistaken** 37:22
**modify** 44:3
**moment** 24:13,16
**Monday** 21:25 33:18
    34:7 37:9,11 38:17
**months** 37:18
**more** 10:1 20:9 21:2
    24:21 26:6 31:2
    34:15 36:1 41:13
**morning** 3:1,5,7,9,16
    3:20 5:20 21:8
    26:4 27:23 34:6
    38:18
**most** 7:13 23:3
**motion** 3:15,22 4:1
    4:11,13,16 5:8,22
    5:25,25 6:2,7 8:15
**motions** 3:12 8:4
    10:24 12:2,4 21:10

**move** 4:1 21:7 38:5
**moving** 36:24 43:5,8
**much** 26:7,15 32:17
    37:12 38:22
**murder** 10:18
**must** 20:17 40:24
**mweinshall@podh...**
    1:21

_____

**N**

**napping** 34:18
**need** 23:9 24:2 30:5
    32:17 34:1,3,11
    36:1 42:24
**needed** 37:25
**needs** 23:22 32:25
**negotiations** 25:5
**neither** 40:2
**never** 13:9 33:16
    40:23
**Nevertheless** 26:9
**new** 35:10
**news** 38:16
**nice** 37:7
**nine** 3:15
**nobody** 11:2
**none** 10:4 17:25 20:8
    30:24
**nonjury** 37:25
**noon** 33:22 42:14
**normally** 7:12 34:8
**NORMAN** 1:15
**Northside** 2:6
**note** 3:10 37:13
**noted** 15:24 22:16
**nothing** 8:12,24 9:1
    12:22 14:1,1 25:18
    35:8 36:23 38:4
**November** 13:20
    25:14,18
**nss@segallgordich...**
    1:17
**number** 5:1 26:25
**numbers** 27:13
**nutshell** 5:14
**N.E** 1:23

_____

**O**

**oath** 12:24
**object** 42:11,12,13
    42:16,18
**objecting** 18:24
**objection** 33:8 40:19
**obvious** 40:14
**obviously** 7:1 11:25
    15:14
**occur** 15:17
**occurred** 18:1,19
    26:3,11,15 27:24
**odd** 27:13
**off** 7:15 30:7,8
**offers** 25:13
**office** 36:13
**Official** 2:10 44:15

**okay** 7:18 9:18 12:23 13:1,2 41:17
**old** 35:1
**omnibus** 3:22 4:1
**once** 40:3 42:7
**one** 3:12,21,21 8:10 9:25 12:4 13:7 14:6 15:21 21:23 22:9 23:1 26:13 27:12,16,25 28:8 32:21 33:18 34:4 37:18 38:1,9 43:1
**ones** 15:21 35:10
**one-sentence** 4:20
**ongoing** 14:5 29:3
**only** 3:12 8:8,22 16:6 17:23 19:17 21:23 22:10 24:5 33:18 34:15
**open** 26:21
**opening** 5:16 32:6,8 32:11 33:2,5,11 39:25
**opinion** 6:24 7:10 11:7,14 12:23 13:11 21:2 30:3
**order** 4:14 6:7,12,14
**organized** 23:9
**original** 25:4 27:3
**Orseck** 1:19
**other** 4:2,4 8:17 10:20 11:18 13:3 13:12 17:8 21:11 23:1 24:6,13 25:10 25:20 26:6,8 28:2 28:8 34:15 38:7 39:14
**others** 3:3 26:14 27:15
**ought** 14:15 40:18
**out** 8:2 9:19 11:4,10 11:24 13:3,24 14:5 14:24 16:15 17:13 17:14,24 19:2,19 19:24 20:12,18,20 20:21 22:2 25:10 26:22,22 27:16 28:7 29:6,7 33:19 34:11 35:4,14 37:4 37:4,5,10,19,23 38:1 39:19 40:4,21 42:23,23
**outlined** 5:7
**outlining** 31:23
**outrageous** 7:14
**outside** 42:25
**outweighs** 5:10
**over** 19:12 27:20 29:10
**own** 22:6

**P**
**pad** 39:18
**panel** 30:14 41:9

**papers** 5:7
**paragraph** 4:19
**Parkway** 2:6
**part** 3:19 6:23 14:23 19:23 30:15
**partially** 5:21
**particular** 26:25 29:18 32:23 43:17
**parties** 3:22 23:3 24:5,18 28:2,10,22 38:11
**party** 4:21
**part-time** 36:16
**past** 12:11,18,22,23 27:11
**paste** 39:4
**pending** 3:12
**people** 6:21 11:21 17:24 20:12 26:21 27:1,2,14,17 28:3 31:2,7 33:21 36:7 41:8
**per** 34:23 35:7
**percent** 40:2
**perception** 31:23
**peremptories** 43:4
**perfectly** 25:25
**perform** 4:22
**performed** 7:2
**perhaps** 26:15
**period** 21:11,12,13 23:5,13,19
**permissible** 20:7
**permit** 26:20
**permitted** 18:19
**person** 41:7,9
**personal** 30:22
**personally** 24:7
**perspective** 29:13,20
**persuade** 36:5
**Peter** 1:18 5:20
**phase** 31:6,13
**philosophy** 36:14
**pick** 42:7
**picked** 41:21 42:5
**place** 29:10
**plaintiff** 1:14 3:5 4:23 6:9 12:15 28:12 34:16 35:17 43:14,24
**plaintiffs** 1:6 4:3,5 4:10,12,15 12:17 25:10 27:13 30:25 43:7
**plaintiff's** 38:25
**plan** 10:5
**plane** 3:12
**pleadings** 21:8 27:23
**Podhurst** 1:19
**point** 9:3 11:10,13 15:15,20 16:10 18:2,12,15 20:15 21:1,5 24:14,17 26:12 28:11,24

31:14 38:25 39:1 42:7
**points** 20:20
**posed** 29:2
**position** 4:5 20:11 26:19
**possible** 20:22 29:15 29,24,25
**possibly** 21:3
**pprieto@podhurst...** 1:20
**practical** 26:24 28:13,20
**practice** 24:11
**preclude** 5:23 6:8
**prefer** 41:9
**preferable** 10:1
**prejudice** 5:10 40:13
**preparation** 30:15
**prepare** 22:19
**prepared** 3:22
**presence** 41:2 42:23 42:25
**present** 21:7
**presentation** 6:11 39:24
**presented** 23:22
**presiding** 27:20
**presumably** 7:16,17 17:13 18:9
**presume** 7:8
**pretrial** 1:11 3:2,9 3:11,13,23 21:9 22:24 30:18 32:3 38:23 39:9
**pretty** 30:18 36:18 38:22 42:17
**Prieto** 1:18 3:4,6 5:19,20,20 6:16,19 7:3 8:7 9:13,25 15:13,22 16:4,20 16:25 17:6,9,17 18:14 19:4 21:20 21:21 22:15 24:7 25:2 28:17 29:11 30:9,11 32:6 33:4 33:13 38:8 41:17 42:14
**private** 4:4 7:5
**probably** 3:23 10:22 11:9,10 22:10 34:9
**probative** 5:10,11
**probe** 7:23
**problem** 10:11 12:1 13:8,13,16,25 16:12,18 18:13 29:12,18,24 36:21 40:17,20
**problems** 9:23 11:12
**procedurally** 21:20 22:12
**procedure** 24:11 26:17,23 40:7,9
**proceed** 21:22

**proceeding** 6:6 9:2,7
**proceedings** 19:6 26:18 44:10
**process** 27:2 34:8
**professional** 36:6
**proffer** 17:1
**program** 9:1
**progress** 26:15
**projected** 32:3
**promised** 30:9
**proper** 16:14 20:19 20:20
**propose** 24:13
**proposed** 38:12 39:6 44:2
**prove** 12:22 13:10
**proved** 32:20
**provided** 12:18
**provoke** 12:9
**public** 28:15
**purchased** 15:4
**pure** 20:17
**purported** 27:3
**purpose** 34:14
**put** 6:24 7:13,13,15 9:14 13:15 20:2,12 27:1 31:1 37:19 38:22,25
**putting** 13:25 19:3
**P.A** 1:15,19
**p.m** 39:8

**Q**
**qualifications** 8:2,13 8:20 10:16
**qualified** 4:22 5:4 12:13
**quarreling** 27:10
**question** 6:21 7:22 10:16 11:6,18,20 12:17 13:22 14:3 18:5 19:16 20:1,19 20:20 28:25 29:1
**questioning** 31:12
**questions** 17:13 24:15 30:11,14,23 31:21 38:7,12 39:6 39:12,16,16,23 40:2,3 41:15
**quiet** 29:9
**quite** 20:4 27:10
**quote** 6:9,11 8:16,21
**quoting** 10:20

**R**
**R** 44:8
**raise** 6:9 8:25
**raised** 8:19 10:16 11:20
**rambling** 16:7
**ramifications** 39:14
**rare** 27:25
**rather** 7:18 31:23 36:17

**read** 13:9,10 27:23 30:17 31:23 38:18
**reading** 21:9
**reads** 4:20
**ready** 21:18 23:9
**really** 23:10 25:19 36:12 37:5,25 38:5 42:21,22
**reason** 41:6 42:1,1
**reasonable** 5:5 12:13 22:20 36:25
**reasonableness** 8:17
**reasonably** 22:23 29:4
**reasons** 25:16 28:25
**rebut** 14:23
**rebuttal** 6:4,20 9:20 43:23,24
**Rebutting** 14:24
**recall** 4:10
**recess** 40:11 42:14
**record** 19:21 30:5,7 30:8,10
**records** 9:7 17:25
**red** 14:24
**referenced** 5:15
**regard** 24:25 25:19 29:21
**related** 6:10
**relation** 17:7
**relevancy** 19:9
**relevant** 12:18 19:1
**relied** 19:19 37:19
**relief** 4:15
**reluctance** 24:18
**rely** 32:10
**remain** 28:5
**remaining** 23:22
**remember** 27:5
**remembering** 10:21
**REPORTED** 2:9
**Reporter** 2:10 42:19 44:15
**reports** 19:17
**require** 32:1
**reserve** 24:15
**reserved** 6:4
**resolution** 23:1
**resolve** 3:19 20:2 23:12,13
**resolved** 3:14,19,21 3:25 28:15 34:21
**response** 5:8 6:1,5
**responsibility** 27:19
**rest** 18:4 25:21
**Revenue** 8:18
**review** 12:24
**reviewed** 3:9 9:7 16:1 21:8
**rid** 40:20
**ridiculous** 10:25 14:14
**right** 5:18 6:4 12:3 12:14,16 14:12,20

14:22 15:3 21:14
22:7 24:3 27:9
40:9,24 41:24
**robbed** 19:21
**rooting** 17:24
**RPR-CM-FCRR-...**
2:9
**RPR-CM-RMR-F...**
44:15
**rule** 5:9 14:12 18:24
20:3 42:15
**rules** 21:4
**ruling** 20:4 33:9
42:11
**run** 30:19 34:3
**running** 35:14

_____
**S**
**S** 1:15 44:14
**sale** 17:12 27:1,2
**same** 10:22 13:11
26:1 33:1 35:18
41:14 42:9
**satisfied** 31:3 41:19
41:21
**saying** 6:14 9:17,23
14:25 19:19,20
26:1 32:17 38:15
**says** 10:3,12,15 11:7
12:14,20,21 13:1,9
13:10,13,14 14:6,7
14:15 17:25 20:23
42:14
**scheduled** 21:14
**screening** 39:19
**seal** 28:4
**sealed** 28:1,5
**SEC** 4:13,17,19,19
4:23,23 5:2,14
6:24 7:11,19 9:3
9:23 10:7 13:7
15:1,2,6,8,13,15
15:21 16:11 17:3
17:12,13,14,15,19
17:24 18:4,5 20:24
21:21 31:16,17
**second** 16:9 31:6
**secret** 26:18,18 29:9
**Section** 3:25
**securities** 4:6 14:17
22:15,18 23:7,8
**SEC's** 6:5 9:4 13:21
19:6
**see** 6:25 8:14 9:16
14:15 21:1 25:20
31:13 44:5
**seeking** 4:11
**seems** 11:22 36:16
36:18 41:22
**seen** 7:14
**Segall** 1:15,15 3:4
25:2,4 26:10 27:4
27:7,9 28:24 29:17
41:4

**selection** 24:11,11
30:12 43:1
**sell** 12:6 16:21
**SENIOR** 1:12
**sense** 23:3,21 26:25
31:18 36:25 40:13
40:16,20
**sent** 19:2,18 20:12
**sequence** 17:10
**series** 3:15
**Service** 8:19
**settle** 25:16
**settled** 38:16
**settlement** 24:17,19
24:23 25:1,22,24
26:13,16 27:21
28:1,1,2,4,11,21
28:22 29:3,7,20,25
30:2,4
**settlements** 26:19
34:22
**share** 20:10,13
**sheet** 21:9
**short** 22:23 25:22
42:25
**shortly** 21:17
**show** 14:24 32:13
33:9 34:19
**shows** 13:4 36:2
**sick** 36:21
**side** 13:3 40:2
**sidebar** 42:21
**sidebars** 42:11,19
**sides** 23:2 25:16
39:15
**signed** 9:21
**significant** 25:5,13
**signing** 3:23
**silent** 29:19
**simple** 11:13
**simplest** 11:10
**simply** 9:21 14:12
20:4 21:5 40:17
**since** 10:1 24:7 34:24
**sit** 37:3
**sitting** 7:7 16:7
35:15 36:3,23
**situation** 24:25 25:3
36:6
**six** 34:5 41:13,17,18
41:20,20 43:4,6,7
43:8,9,10,12,13,14
**smoothly** 42:17
**solid** 34:5
**some** 3:15 7:23 8:1
11:1,20 14:4,5
18:5 19:9 22:17,19
23:5,12,19,24
24:14 25:6,11,11
27:13 28:14,15,25
29:6 30:10,19,24
31:6,13,24 36:5,16
36:16 39:24 40:13
41:25

**somebody** 7:6,20
31:6 36:21 37:4
38:2
**somehow** 20:6
**something** 8:1 10:18
19:9 20:15 24:15
26:7 29:7 31:8,11
31:22 32:4,24 35:3
40:23,24 42:2,21
42:22,24
**sometimes** 38:24
**someway** 28:22
**somewhat** 24:19
**somewhere** 37:22
**sons** 9:6
**soon** 21:18
**sooner** 23:15 24:1,4
**sorry** 5:25 18:3
37:12
**sort** 10:17,22 11:1
21:3 22:17 29:6
34:3 38:13
**Southern** 1:1 36:15
**specifically** 4:14
**spend** 14:11
**spring** 5:8
**stand** 21:19 40:19
41:3 42:12,16,18
**standing** 7:21 38:15
**standpoint** 26:14
**start** 15:8,13 17:15
21:10,12,15 22:16
25:2 27:6 30:11
33:18,19 44:3
**started** 15:6
**starting** 38:14
**starts** 21:24 22:4
**state** 5:3 16:5,9
19:18 20:1
**statement** 5:17 7:11
11:1 12:24 13:5
15:20 16:19 20:16
31:22 32:7,9 38:20
39:4,25 42:3
**statements** 32:11
**States** 1:1,12 2:10
44:16
**status** 21:8,10 24:25
**Ste** 1:16,19 2:11
44:17
**stick** 40:9
**Stiefel** 1:8 3:2 8:10
8:23 9:3,6,16 10:2
10:3,9,25 11:10
12:6,8,10 13:16,20
15:4,16,16,18 17:2
17:22 18:3,20 19:4
19:13 43:3,3,9
**Stiefel's** 5:3
**still** 11:13
**stipulated** 38:20
**stipulation** 3:10,13
3:23 21:9 30:18
39:1

**stock** 12:7 19:3 20:9
27:22
**straightforward**
32:1
**Street** 1:19
**stricken** 7:17
**strict** 29:25
**strictest** 28:6 29:8
**strike** 7:20
**structured** 28:9,21
29:25
**subclass** 27:7
**subject** 25:19 29:19
**submit** 9:9 30:13
31:4 38:12
**submitted** 30:23
43:16
**submitting** 3:24
**subpoena** 37:19
**sub-banks** 27:13
**sudden** 35:20
**sue** 13:7
**sued** 10:15 14:2 15:1
**suggest** 7:25
**suggesting** 10:8
43:10
**suit** 13:8 25:11
**Suite** 2:7
**summary** 8:15 32:2
43:19
**summation** 30:16
**summer** 25:6
**superficial** 11:16
**suppose** 11:8 16:13
19:24
**sure** 10:20 20:18
25:17 27:9 37:13
**surprised** 40:7
**suspect** 9:17
**sustained** 42:13
**swear** 42:8
**system** 36:18

_____
**T**
**T** 44:8,8
**take** 3:11 4:5 21:6
30:10,21 31:5
32:16,17 34:5,9
37:3,4,5,12 40:11
40:21 42:20,24
**taken** 15:25,25
25:12
**taking** 18:22
**talk** 24:14,17 25:21
28:17,18,23
**talked** 24:23
**talking** 16:5,9 17:14
25:14 30:12
**TD** 27:12
**tell** 13:8 24:2 30:2,19
32:14 34:18 35:25
38:20 39:5
**telling** 11:21 15:19
25:3

**ten** 12:25,25 13:11
14:4,22 15:20 34:6
34:7,8,9,24 35:2,6
35:16 36:3 39:15
39:25 40:15
**ten-day** 21:15 34:18
36:9
**ten-minute** 34:6
40:11
**terms** 24:10 28:9
33:20 38:21
**testify** 8:11,23 12:10
18:16,17 19:4,15
19:16
**testifying** 6:22 7:7
13:23 14:4,17,20
**testimony** 6:10 14:9
14:9,13,18 15:25
23:22
**thank** 5:18 15:12
22:14 26:11 29:22
38:8 44:5
**thanks** 41:5
**their** 5:24 6:1,22
8:15 9:8 10:2
11:13 30:22 32:10
35:11 37:16
**they'd** 32:11
**thing** 7:21 16:9
19:24 20:17 21:3
26:1 27:2 29:13
32:15 33:13 34:3
34:15 39:2 41:14
42:9 43:1
**things** 7:14 9:18
31:18 37:8 38:13
39:14 41:16
**think** 7:22 10:1,6,13
17:16 18:15 20:19
22:21 23:20,24
26:8 28:19,24,25
29:2,4,13,18,20
30:3,5,18 32:9
34:18 36:1,8,17,25
37:8 38:2,9,13,24
40:3,8,22 41:10
42:1,13 43:10 44:5
**thinks** 41:7
**third** 4:21 15:25
35:20
**thirdly** 5:7
**thorough** 11:16
**though** 27:18 40:6
**thought** 10:15 17:4
26:7
**thousand** 35:3
**thousands** 33:17
**three** 7:3 15:7 21:11
21:17 22:8 24:2
26:9 27:20,24
32:21 35:23,24
41:13,18,20,20
**threw** 18:6
**through** 10:2 12:5

12:23,25 17:10
20:8 30:15,19,22
33:22 34:7 36:20
40:12 41:14
**Thursday** 38:16,18
39:7
**ties** 31:8,8
**till** 16:23 33:22 34:8
35:22 41:19,21
**Tim** 3:2
**time** 12:19 14:3 15:7
15:18 16:6,12,13
18:3,9 19:1,14
20:8 21:5 22:9,17
22:19,23,25 23:5
23:13,19,20,25
24:8,9,17 25:23
32:17,19 33:1,14
33:21 34:22 35:16
36:19 37:13 38:19
39:13 40:2,10
41:10
**timeframe** 18:23
20:11,16
**timeframes** 33:3
**timeline** 16:21
**timely** 23:1
**times** 35:2
**today** 3:23
**TODD** 2:5
**together** 30:16 38:22
**told** 12:25 29:14
35:21 37:24
**top** 22:6
**tossing** 20:25
**total** 43:4,5,6,9
**toward** 26:16
**trail** 7:18
**transaction** 16:22,25
17:2 18:18
**TRANSCRIPT** 1:11
**transcription** 44:10
**transfer** 26:8
**translates** 34:25
**Traurig** 1:23 2:3,6
**treat** 36:6
**trial** 5:15 13:20 20:2
21:6,15,16,19
22:17,18,22 23:4,8
23:9,17 24:4,9,20
24:20,21,22 33:10
33:13 34:17 35:13
35:20 36:8,9,11,12
36:24 43:2,18,19
43:20
**trials** 34:23 35:1
36:6,16
**tried** 24:8 33:17
34:22
**trouble** 12:2 20:17
**trustee** 12:11
**truthful** 15:19 16:18
**try** 3:18 14:16 25:13
26:21,21 32:24

33:2,14 34:2,21
36:4 42:15
**trying** 6:25 14:13,21
18:12 25:17 34:13
34:24 36:15 37:10
**turn** 30:25 31:3
39:20 40:17 41:3
41:12
**turned** 37:23 38:1
**turns** 34:11
**TV** 40:8
**twelve** 34:9 43:10
**twelve-day** 34:9
**two** 5:1 8:25 9:6 15:7
15:23 21:17 24:2
26:6 32:16,21 33:1
36:9 41:3,12,17
43:2,22,25
**two-week** 21:11,12
21:13 22:7
**typically** 39:11

_____
**U**

**under** 5:9 9:10 12:24
15:8 28:6 37:19,21
**understand** 8:9
18:14 19:7,15
25:25 35:13
**understanding** 17:1
17:18 21:19 22:11
22:12
**unfair** 5:10 15:24
**unique** 31:11,17
32:4
**United** 1:1,12 2:10
44:16
**unlikely** 25:15
**until** 14:8 15:9,14
16:2 17:4 18:1,10
19:21 33:9,23 36:7
41:21
**upset** 37:5
**use** 4:13 8:7,8 9:2
11:9 33:4,7,8
36:18
**used** 4:21 18:11
25:10 36:18
**uses** 6:21
**using** 10:6 34:8
**usual** 30:13 40:7,9
**usually** 3:11 33:24
39:22

_____
**V**

**valuation** 8:21
**valuations** 4:22 8:13
8:17,20 12:13
**value** 5:10,11 19:2
20:12 27:22
**vanishing** 35:10
**verdict** 28:16
**very** 14:12 25:7
29:25 30:5 39:12
39:13 40:4,13

view 25:9 26:12
28:24 38:25 39:1
40:18
**voir** 30:23 31:11
32:3 38:11,14 39:6
40:21
**vs** 1:7 3:2

_____
**W**

**W** 1:19
**wait** 35:23,24 37:15
**waited** 38:1
**waiting** 37:3,17
**want** 10:13,14 11:5
12:22 21:2 22:21
22:23 23:11,14
24:4 25:13 26:21
28:5 30:3,3 32:2
32:24 33:7 36:3,22
38:11 39:2 40:19
40:22 43:25
**wanted** 21:25 24:10
**wants** 33:25
**wasn't** 14:8 18:10
**wasting** 37:16
**watching** 40:8
**way** 8:9,22 9:20,25
10:1,8 11:10 13:7
14:9,14 16:6 17:23
20:2,18,22 23:1
28:8,13 30:13
31:10 32:4 33:18
33:19 34:4 35:25
36:4,15,17 37:9,12
38:6 39:22 40:3
**wear** 31:7
**Wednesday** 37:9,11
**week** 21:24,24 33:14
33:18
**weeks** 15:4,7
**Weinshall** 1:18 3:6
**welded** 32:5
**well** 7:8 8:5 9:14
10:9 13:12 15:2
16:5 19:20 23:12
26:19,24 27:21,25
30:18 31:10 33:8
35:2 36:19
**were** 3:18 6:4,17,23
7:2 8:19 9:23
10:15 11:11 12:13
12:16,25 13:1,2,2
13:5 14:2,25 17:24
25:5,13,14,16 26:5
26:25 27:1 28:4
29:6,7 30:12
**West** 24:9
**We'll** 3:23
**we're** 9:2 18:22
22:24 23:19 25:24
35:6
**we've** 5:7 7:18 34:18
**while** 3:14 24:7 37:2
**whole** 7:21 23:13

27:2 29:24 41:15
**Wilkie** 2:11 44:16
**willing** 29:3,19
**wins** 28:12,17
**wish** 7:8 30:14,24
43:19
**wished** 6:20
**withdraw** 44:4
**witness** 7:7 35:21
37:20
**witnesses** 5:16 23:5
32:13,13 34:2,17
35:14,25 36:4
37:13
**wonderful** 20:5
**wording** 30:1
**words** 29:5
**work** 24:3 29:6,7,17
36:10,12,16,18,19
41:22
**works** 40:21,25
**world** 11:2 20:6
**worth** 20:9
**wouldn't** 7:21 23:15
**Wozniak** 2:5 3:8
**wozniakt@gtlaw.c...**
2:8
**write** 40:11
**writing** 38:17
**written** 22:5 31:21
**wrong** 8:12,24 9:2
10:5 11:2 16:1
**wrote** 11:21

_____
**Y**

**Yeah** 11:11 13:1
43:6
**year** 4:10 5:2,6 24:2
34:23 35:7
**years** 12:11 19:12,19
24:2,2 27:11 36:18
40:15
**yellow** 39:18
**younger** 36:5

_____
**Z**

**zero** 5:11
**Zloch** 4:7 7:20

_____
**$**

**$16,000** 20:10,12

_____
**0**

**09** 17:20
**09-21871-CIV-JLK**
1:3

_____
**1**

**1:00** 33:23
**1:30** 33:23
**10th** 21:11,13,24
**11:30** 44:6
**12** 12:25 34:24 43:5
43:6,9

**12:30** 33:22
**1221** 2:3
**15** 13:1 34:6,7,11
36:3 39:15
**16,000** 11:22
**18** 4:19
**19** 34:25
**1988** 24:8
**1994** 18:18

_____
**2**

**2nd** 1:23
**2,000** 27:13
**2:00** 38:17 39:10
44:3
**20** 35:2
**20th** 16:21
**200** 35:7
**2008** 5:6 18:19
**2009** 12:12 15:3,6
16:10,22 17:9,18
18:19 19:19,21
**2011** 4:6 5:2 13:20
**2012** 1:7
**217** 27:14
**23** 33:8
**231** 28:4
**241** 27:4
**25** 1:19
**271** 27:10
**29** 27:16

_____
**3**

**3** 4:1
**30** 19:12,19 23:14,15
24:1,4
**30327** 2:7
**305/358-2800** 1:20
**305/523-5290** 2:12
44:17
**305/579-0500** 1:24
**305/579-0745** 2:16
**305/755-4930** 1:16
**3290** 2:6
**33130** 1:20
**33131** 1:16,24 2:4
**33132** 2:12 44:17
**333** 1:23

_____
**4**

**400** 2:7,11 44:17
**403** 5:9
**42** 36:18
**433** 8:14
**460** 5:25,25
**464** 6:1
**466** 6:13

_____
**5**

**5:00** 33:24 39:7
**5:15** 33:24
**5:30** 33:24
**52** 34:23 35:1
**53** 35:1,2

**6**

**6th** 12:12 15:6 17:9
   17:17,20
**6:30** 34:1
**60** 23:14
**67** 27:2,5,6,8
**678/533-2100** 2:7

**7**

**7th** 21:24,25 22:4,6
   22:6,11 25:24 44:5
**7.4** 27:12
**7:00** 34:1

**8**

**8N09** 2:11 44:17
**800** 1:19
**801** 1:16
**803(c)** 9:10

**9**

**9** 1:7
**9th** 16:10
**9:00** 33:19
**9:30** 33:20
**90** 40:2
**900** 1:16
**94** 19:9
**95** 19:10